## COMMONWEALTH v. W. R. WALDMAN.

APPEAL BY DEFENDANT FROM THE COURT OF QUARTER SESSIONS OF PHILADELPHIA COUNTY.

Argued January 28, 1891—Decided February 16, 1891.
[To be reported.]

1. The provisions of article V., § 14 of the constitution, and § 1, act of April 17, 1876, P. L. 29, granting and regulating the right of appeal from summary convictions by magistrates, do not give to the defendant the right to have such an appeal tried by a jury.

2. The summary proceeding prescribed by the Sunday law of April 22, 1794, 3 Sm. L. 177, for the trial of persons charged with the violation thereof, is not in conflict with article I., § 9, of the constitution, guaranteeing to the accused, " in prosecutions by indictment or information," a speedy trial by jury.

3. The keeping open by a barber of his place of business on Sunday and the following of his wordly employment of shaving his customers, is not a necessity within the meaning of the provision in the act of April 22, 1794, excepting from its operation works of necessity or charity.

Before Paxson, C. J., Green, Clark, Williams, McCollum and Mitchell, JJ.

No. 214 July Term 1890, Sup. Ct.; court below, No. 1 February Term 1890, Q. S.

On February 4, 1890, an order was made by the court below allowing to William R. Waldman an appeal from the judgment of a magistrate, convicting the appellant of a violation of the act of April 22, 1794, 3 Sm. L. 177, by performing labor on Sunday, January 26 and February 2, 1890, at his place of business in Philadelphia.

A transcript of the magistrate's record having been filed in

pursuance of the order of the court, the case was called for hearing on June 20, 1890, before PENNYPACKER, J., whereupon counsel moved that the defendant be granted a trial by a jury of the county, duly empanelled.

By the court: Motion overruled; exception.[1]

After hearing, the court, PENNYPACKER, J., filed an opinion in part as follows:

The evidence for the prosecution is that on January 26, 1890, and February 2, 1890, both of which days were Sundays, the barber shop of the defendant was open and in full operation. Some men were being shaved; others were getting their hair dressed, and still others were waiting until attention could be given to them. The defendant, the proprietor of the shop, was participating in the work, and received money for it as compensation. For the defence, a number of witnesses were produced, who testified that it has been the custom for many years, in Philadelphia, to keep the barber shops open on Sunday, for the accommodation of persons who cannot get shaved upon Saturday; that there are some persons who are employed through the other days of the week; that there are others whose beards are so strong that they are shaved every day in order to be cleanly, and that it was in their opinion a matter of necessity to keep open the shops.

The act of 1794, like every other act, is to be construed without regard to the propriety or wisdom of the legislation, and solely with a view of ascertaining and enforcing the purposes set forth in it and sought to be accomplished by it. It was enacted immediately after the visitation of Philadelphia by the yellow fever in 1793, at a time when that scourge was widely regarded as a punishment inflicted upon the community because of increasing levity and worldliness, and its object plainly was by the imposition of penalties to compel the observance of Sunday. It prohibits worldly employment and business upon that day, excepting only works of necessity and charity; and, since it cannot be disputed that the business of the defendant is a worldly business, the conviction must stand, unless it can be shown that the business as it was conducted by him upon Sunday is such a necessary or charitable work.

It is contended, on the part of the defendant, that, since there

are some persons whose beards require shaving daily, and there are some whose occupations through the week make it difficult or impossible for them to get shaved except upon Sunday, the conduct of his business upon the days in question was a work of necessity, and therefore within the exception in the statute. It seems to me to be quite obvious that the argument is a fallacy. If it had appeared that the work which was done was limited to such exceptional persons, there would be ground doubtless for the contention. It cannot be ascertained from the evidence that any one of the persons served was of this class, but, since there is a possibility of it, the argument is that the defendant was justified in keeping his shop open, not only for them, but for all other persons; not only for shaving, but for hair cutting, shampooing, and the attendant services; or, in other words, for the pursuit of his wordly business in the ordinary way.

Nor does it appear from the testimony that the object of the defendant was either to do charity or to supply necessity. On the contrary it is quite clear that he was influenced by the usual motives which govern men when following their worldly vocations, the securing of trade, the gathering in of compensation, and the laying away of profit. If the position so strenuously and ably urged by counsel for the defendant were sound, it would result in the entire abrogation of the act of 1794, because the same process of reasoning would throw open substantially all the avenues of business life. In a large community such as this is, there can always be found some hungry to whom the baker may supply bread; some needy to whom the tailor may furnish clothing, and some wanderer in want of transportation. And, to extend the thought further, the baker cannot bake without coal, and the railway cannot carry without iron. If there are persons so closely tied to their occupations during the week that they cannot find sufficient time to get shaved except upon Sundays, the same want of time will prevent them from seeking the shoemaker, the plumber, and the forgeman upon the ordinary days of labor. Although this question, as it affects the barbers, has not been decided by the Supreme Court of Pennsylvania, it has been before a number of the judges of the courts of Common Pleas, and, to hold that the conviction should be reversed, would be to determine contrary

to the decisions of all of them: Commonwealth v. Jacobus, 17 Pittsb. L. J. 154 (1 Leg. Gaz. R. 491); Commonwealth v. Stodler, 15 Phila. 418; Commonwealth v. Williams, 1 Pears. 61. See, also, Philips v. Innes, 4 Cl. & F. 234.

For the reasons given above, it is not thought that such a departure ought to be taken. If, as has been earnestly said, the demands of the people of this commonwealth have grown too great to be restrained by the bonds imposed by the statute of 1794, and the developments of modern life are such as to require that these restraints should be broken or relaxed, an appeal to the law-making power will not long remain unheeded. The province of a judge is to interpret, not to legislate.

Conviction affirmed.

And now to wit, the evidence in the above case having been fully heard and considered, the judgment of the magistrate is affirmed; and the said William R. Waldman is, upon the proof aforesaid, found guilty and convicted of doing and performing worldly employment and business within the city and county of Philadelphia, the same not being a work of necessity or charity, on the twenty-sixth day of January and on the second day of February, 1890, each of said days being Sunday, to wit, performing his worldly business or employment of shaving and hair-cutting at 422 Race street, in said city, on each of these days. And it is therefore adjudged that the said William R. Waldman forfeit and pay the sum of four dollars, with costs of suit, and in default of payment, or if goods and chattels cannot be found whereof to levy the same, he shall be committed to the county prison of Philadelphia county for a period of six days.[3]

—Thereupon, the defendant took this appeal, specifying that the court erred:

1. In refusing the defendant's motion.[1]

2. In affirming the defendant's conviction.

3. In entering the final order.[3]

*Mr. Edward A. Anderson* (with him *Mr. John H. Fow*), for the appellant:

1. Writers and judges characterize trial by jury, especially in criminal cases, as essential to political and civil liberty.

In article I., § 9, of the constitution, it is declared that the accused shall have a right, " in prosecutions by indictment or information," to " a speedy public trial by an impartial jury of the vicinage." Does not this case come within the scope of that declaration? It is true, the penalty is a light one; but, if the right can be denied in this case, it can just as well be denied were the legislature to raise the penalty to years of imprisonment and a fine of several thousand dollars. And this is just such a case as should be tried by a jury. The statute excepts from the prohibition works that are charitable and necessary. Who can best judge what is necessary for a community, a judge or the people themselves? This is not a question of law, but one of fact alone; not fixed, but uncertain and shifting; changing with the wants, thoughts and habits of the people; differing with the character of the community, the seasons and the climates. Its determination by the courts has led and will lead to confusion. The decisions have changed and swayed with the mind of the judge or jury, and with the special circumstances of the case, just as it should always be with a jury, and just as it should never be with a judge.

2. In a number of cases summary convictions have been upheld, and men deprived of their liberty, without the intervention of a jury, upon the argument that the legislature has the right to create new offences and have them adjudicated by any tribunal it pleases: Van Swartow v. Commonwealth, 24 Pa. 131; Rhines v. Clark, 51 Pa. 101. But these decisions and this logic cannot be reconciled with the declaration of rights, by which both the constitution of 1790 and that of 1874 guaranteed to accused persons a trial by jury; and it is evident that this constitutional provision was not in the mind of the court when those cases were decided. In pursuance of article V., § 14, of the present constitution, granting the right of appeal from summary convictions, etc., by magistrates, to such courts of record as might be prescribed by law, the legislature passed the act of April 17, 1876, P. L. 29, sending appeals in suits for penalties, where no imprisonment is involved, to the Court of Common Pleas, and appeals from summary convictions to the Court of Quarter Sessions. If this distinction were not made with the intent to give a trial by jury in the latter class of cases, the division of jurisdiction would have

been unnecessary, especially since the same judges sit in both courts. It was evidently made in view of the fact that in the Court of Quarter Sessions the jury are judges of the law: Kane v. Commonwealth, 89 Pa. 522; Spencer v. Colt, 89 Pa. 314; Ott v. Oyer, 106 Pa. 7; Grambs v. Lynch, 4 Penny. 243; McFadden v. Reynolds, 20 W. N. 312.

3. Some of the lower courts have held, as matter of law, that shaving on Sunday is not a work of necessity, but this court has never so decided. In Ungerict v. State, 119 Ind. 379, upon a statute analogous to our own, it was held that the court could not decide this question as one of law, but that it was for the determination of a jury upon the evidence. Similar decisions have been made by the Supreme Courts of Ohio and Iowa. However, if the question was one for the decision of the judge, in this case he erred in deciding it against the defendant. By works of necessity the statute means, not only those things which are absolutely necessary to sustain life or which cannot be dispensed with, but also many things only relatively necessary, which are morally fit or proper to be done on that day, under the circumstances of the particular case: Flagg v. Millbury, 4 Cush. 243. The judge is mistaken in supposing that the regulation was the result of a spasm of virtue and fear of divine wrath, caused by the yellow-fever scourge. Its title shows that it was passed to take the place of a prior act that was about to expire. It is no part of its object to enforce the observance of a religious or moral duty, but it simply prescribes a day of rest from motives of public policy, as a civil regulation: McGattrick v. Watson, 4 Ohio St. 571. Shaving by barbers may not have been a necessity in 1794, but to-day, in Philadelphia, it is so.

4. The argument of the learned judge, that the defendant's position, if sound, would result in the entire abrogation of the act of 1794, is not logical, nor are his examples in point. You can buy clothing and other articles on any day of the week for use on Sunday, but a clean face or well-dressed hair on Saturday does not mean a clean face or well-dressed hair on Sunday, any more than a full stomach on Saturday night obviates the necessity of eating on the next day. The following are examples of Sunday work that have been held to come within the proviso: The operation of an ice manufactory: Hannes-

Arguments.

dorf v. State, 26 Tex. App. 597; the shoeing of a mail-stage horse: Nelson v. State, 26 Tex. App. 599; traveling to a camp meeting: Fartell v. Railway Co., 109 Miss. 298; the employment of an undertaker: McNamee v. McNamee, 9 N. Y. 720; shaving an aged and infirm person: Stone v. Grimes, 146 Mass. 353; the handling of barley which otherwise would have been spoiled: Crockett v. State, 33 Ind. 416; tending a lock in a canal: Murray v. Commonwealth, 24 Pa. 270; a servant driving his master to church: Commonwealth v. Nesbit, 34 Pa. 398; gathering sugar waters which would otherwise be wasted: Nenus v. State, 31 Ind. 189; gathering grain which might be spoiled: Turner v. State, 67 Ind. 597; selling railroad tickets to a camp-meeting place: Commonwealth v. Fuller, 4 Pa. C. C. R. 429; repairing a railroad track: Commonwealth v. Fields, 4 Pa. C. C. R. 434.

*Mr. Lewis D. Vail* (with him *Mr. Theodore Barrett*), for the Commonwealth:

It is undisputed that the defendant's shop was open for business on January 26 and February 2, 1890, and that the business was conducted on those days as on other days of the week, the defendant being present, participating in the work, and receiving compensation therefor. This brings him within the letter of § 1, act of April 22, 1794, 3 Sm. L. 177, forbidding "any worldly employment or business whatsoever" on Sunday, unless the work performed by him was a work of necessity or charity.

1. The business of a barber is not a work of necessity or charity. It has been so decided in England: Philips v. Innes, 4 Cl. & F. 234. The English statute of 29 Car. II. c. 7, enacted in 1667, was the model of our Pennsylvania legislation: Omit v. Commonwealth, 21 Pa. 432; though it forbids only labor in one's ordinary calling. Even under that prohibition, the defendant would be liable to the penalty in this case. He is clearly so, under our more comprehensive statute: Johnston v. Commonwealth, 22 Pa. 108. The rule laid down in Flagg v. Millbury, 58 Mass. 243, cited by appellant, was explained and qualified in later cases: Commonwealth v. Sampson, 97 Mass. 407; Jones v. Andover, 92 Mass. 18; Commonwealth v. Nagle, 117 Mass. 142; Commonwealth v. Boston, 117 Mass.

64; Stanton v. Railroad Co., 96 Mass. 486. And see Watts v. Van Ness, 1 Hill 76 ; Smith v. Wilcox, 19 Barb. 581. The lower courts of this state have uniformly held such a business as the defendant's unlawful : Commonwealth v. Williams, 1 Pears. 61 ; Commonwealth v. Jacobus, 17 Pittsb. L. J. 154 (1 Leg. Gaz. R. 491) ; Commonwealth v. Stodler, 15 Phila. 418; Commonwealth v. Weidner, 4 Pa. C. C. R. 437; Baker v. Commonwealth, 5 Pa. C. C. R. 10 ; Commonwealth v. Martin, 7 Pa. C. C. R. 154; Seaman v. Commonwealth, 11 W. N. 14; Commonwealth v. Burry, 5 Pa. C. C. R. 484; affirmed in Burry's App., 1 Mona. 89. See, also, Miller v. State, 76 Ind. 310; Commonwealth v. Marzynki, 149 Mass. 68 ; Yonoski v. State of Indiana, 5 Am. & Eng. R. Cas. 40, and note at page 42; Handy v. Publishing Co., 41 Minn. 188 ; Sparhawk v. Railway Co., 54 Pa. 407.

2. The defendant was not entitled to a trial by jury. The constitutional provisions do not extend the right, but only secure it in the cases in which it was a matter of right before : Article I., § 6, constitution of Penna. ; Cooley, Const. Lim., 410; 2 Hare's Am. Const. Law, 860; Van Swartow v. Commonwealth, 24 Pa. 131 ; Rhines v. Clark, 51 Pa. 101 ; Byers v. Commonwealth, 42 Pa. 89 ; State v. Frederick, 45 Ark. 347 (55 Am. Rep. 555); Burry's App., 1 Mona. 89. The constitution of the United States, in prohibiting a state from depriving a person of his property without due process of law, does not require all trials in the state courts, affecting property or persons, to be by jury ; it is sufficient if trial be had according to the settled course of judicial proceedings : Walker v. Sauvinet, 92 U. S. 90 ; Kennard v. Louisiana, 92 U. S. 480 ; Van Swartow v. Commonwealth, 24 Pa. 131 ; Hurtado v. California, 110 U. S. 516 ; and the seventh amendment to that constitution relates only to trials in the courts of the United States : Edwards v. Elliott, 21 Wall. 532 ; Commonwealth v. Morrison, 22 Minn. 181. The act of 1794 having provided a remedy for Sabbath breaking, and the mode of enforcing the penalty, it follows that no indictment will lie for the offence : Rex v. Richardson, 1 Burr. 545 ; § 13, act of March 21, 1806, 4 Sm. L. 332, re-enacted by § 183, act of March 31, 1860, P. L. 426 ; Commonwealth v. Evans, 13 S. & R. 429 ; Commonwealth v. Naylor, 34 Pa. 86 ; Omit v. Commonwealth, 21 Pa. 426 ; Com-

Opinion of the Court.

monwealth v. Edwards, 1 Ash. 46; Hellings v. Commonwealth, 5 R. 64; Rees v. Emerick, 6 S. & R. 288; Commonwealth v. Railing, 113 Pa. 37. The constitutional right of trial by jury has no application to petty offences, which should be left to the local magistrates, relieving the courts of the burden of trying trivial cases: People v. Justices, 74 N. Y. 406; Devin v. People, 20 Hun. 98; People v. Dutcher, 83 N. Y. 244; Sands v. Kimberk, 27 N. Y. 152; McGear v. Woodruff, 33 N. J. 213; Howe v. Treas, 37 N. J. 146.

3. The constitutionality of the act of April 22, 1794, is finally settled: Waldo's App., 9 W. N. 200; Commonwealth v. Wolf, 3 S. & R. 48; Specht v. Commonwealth, 8 Pa. 316. And there is no question of the jurisdiction of the Court of Quarter Sessions in this case: § 16, act of June 16, 1836, P. L. 791; act of April 17, 1876, P. L. 29; McGuire v. Shenandoah Bor., 109 Pa. 613. Summary convictions have been sustained, and the right of trial by jury denied, in the case of professional thieves, burglars and pickpockets: § 1, act of March 13, 1862, P. L. 115; Byers v. Commonwealth, 42 Pa. 89; professional counterfeiters and forgers: § 1, act of April 13, 1867, P. L. 1230; hunting and shooting on Sunday: §§ 7–10, act of April 21, 1869, P. L. 84; profane cursing and swearing: § 2, act of April 22, 1794, 3 Sm. L. 178; desertion cases: §§ 28–30, act of June 13, 1836, P. L. 793; vagrancy: §§ 1, 2, act of May 8, 1876, P. L. 154; § 1, act of June 13, 1883, P. L. 100. For light as to the intent of the constitutional convention and the legislature, in the provisions granting the right of appeal in cases of summary conviction, we may resort to the debates on the provisions in question: 2 Hare's Am. Const. Law, 1301. And it was not the intention of the convention to repeal the whole law of summary convictions: 7 Deb. Const. Conv., 515; Commonwealth v. Johnston, 16 W. N. 349.

OPINION, MR. CHIEF JUSTICE PAXSON:

The defendant is a barber, and was convicted before a magistrate, under the act of April 22, 1794, 3 Sm. L. 177, for performing his worldly employment or business on the Lord's day, commonly called Sunday. The magistrate imposed the usual penalty, and from his judgment an appeal was taken to the Quarter Sessions, under the act of April 17, 1876, P. L. 29. The

Opinion of the Court.

judgment was affirmed by that court, and the record brought up by a writ of certiorari.

The act of 1794 has now been in force for nearly one hundred years. It has been before this court in repeated instances, and its constitutionality sustained. It would be a waste of time to refer to the cases. It is contended now, however, that the defendant was entitled to a jury trial, and that it is for a jury to say whether shaving a man's face and cutting his hair, are works of necessity. If such questions were submitted to a jury we would have no rule at all; one jury would find one way, and another jury would decide the other way; so that the practical result would be that one barber would be compelled to close his shop on Sunday, while that of his rival would be open. The practical difficulty of the case cannot be met in this way, nor has any authority been shown for the claim to trial by jury. When the legislature shall decide that in every case of a petty summary conviction the defendant shall have the right to a jury trial, they will probably say so in language too clear to be misunderstood.

We are now asked to say that shaving is a work of "necessity," and therefore within the exceptions of the act of 1794. It is, perhaps, as much a necessity as washing the face, taking a bath, or performing any other act of personal cleanliness. A man may shave himself, or have his servant or valet shave him, on the Lord's day, without a violation of the act of 1794. But, the keeping open of his place of business on that day by a barber, and the following his worldly employment of shaving his customers, is quite another matter; and, while we concede that it may be a great convenience to many persons, we are not prepared to say, as a question of law, that it is a work of necessity within the meaning of the act of 1794. We do not make the law; our duties are limited to interpreting it, and we feel ourselves bound by the construction which our predecessors have placed upon the act for nearly a century.

The judgment is affirmed.