## Campbell v. Commonwealth et al.

*Louis Klein*, for prosecutor.
*Robert E. McCreary*, for defendant.

READER, P. J., November 25, 1941. — The above-stated case is before us on a writ of certiorari from the judgment of George L. Kiefer, burgess of the Borough of Aliquippa. On February 25, 1941, defendant was found guilty in a proceeding before said burgess who imposed a fine of $25 and costs of $2.50 upon defendant. Defendant paid the fine and costs, but later instituted this proceeding by writ of certiorari.

The record returned by the burgess to the writ of certiorari is a book known as a "Police Arrest Book". In this book the proceeding against Fred Campbell is designated as no. 941. The charge as stated on the arrest slip is "Prop. Gaming". Subsequently to the making of the return by the burgess a typewritten copy of his record was filed. From this record it appears that defendant was charged with a violation of section 9 of Ordinance no. 415 of the said Borough of Aliquippa. The charge was further specified as "Keeping an ill-governed house".

It was conceded at the hearing before the court that the prosecution was under section 9 of Ordinance no. 415 of said Borough of Aliquippa. The said section reads as follows:

"From and after the passage, publication and recording of this ordinance, any person who shall be guilty of keeping an ill-governed or disorderly house or place to the encouragement of idleness, gaming, drinking or other misbehavior, or to the disturbance of the peaceable inhabitants within the limits of the Borough of Aliquippa, shall upon conviction thereof, before the burgess or any justice of the peace of said borough, be adjudged guilty of keeping a disorderly house and sentenced to pay the costs of prosecution and a fine of not more than one hundred dollars, and in default of the payment of said fine and costs the person so convicted shall be sentenced and committed to the county jail for a period not exceeding thirty days, or to the borough lockup not exceeding two days, or be compelled to work on the streets or public works of said borough for a period not exceeding one day for each dollar of fine imposed in the discretion of the burgess or justice of the peace imposing the same, the said fine to be for the use of the said Borough of Aliquippa."

This section defines the offense in substantially the same language as found in The Penal Code of June 24, 1939, P. L. 872, sec. 511, 18 PS §4511. The statute

makes the offense so defined a misdemeanor triable before the court of quarter sessions. Other sections of the ordinance define other offenses such as disorderly conduct, resisting an officer, carrying concealed weapons, open lewdness or public indecency, violations of the liquor laws, and the like, as the same are defined in the criminal code of the Commonwealth.

The offenses defined in the ordinance are made punishable in proceedings before the burgess of the Borough of Aliquippa or any justice of the peace in said borough. The purpose of the ordinance, with reference to all such offenses as are defined in the Criminal Code and brought within the jurisdiction of the court of quarter sessions, is to give jurisdiction over them as well to the local officers, and to punish them, where defendants are found guilty, by fines payable to the municipality. It is clear as to all such offenses the ordinance is ineffectual. It cannot exclude the jurisdiction of the court of quarter sessions by conferring such jurisdiction upon the burgess or justices of the peace within the municipality.

The Borough of Aliquippa contends that, for several reasons, the writ of certiorari should be quashed and the judgment of the burgess permitted to stand. The first ground upon which the borough bases its contention is that the district attorney was without authority to appear as the petitioner for the writ. The petitioner is thus stated in the petition, namely "The petition of Fred Campbell, by the District Attorney Robert E. McCreary, respectfully represents." There is nothing in the whole record before us to indicate that Mr. McCreary was not acting for Campbell as his attorney, and with his authority. We are satisfied that any defendant in such a proceeding may apply for a writ of certiorari through his attorney. The right of an attorney so to act for a defendant is recognized in the case of Commonwealth v. Fox et al., 31 D. & C. 424. We think there is no merit in this position taken by the Borough of Aliquippa.

In the second place it is argued that defendant, having appeared before the burgess, pleaded guilty, and voluntarily paid his fine and costs, is not entitled to the writ of certiorari. In the transcript of the burgess' record submitted to us in typewriting, as hereinbefore stated, the entry as to fine and costs reads as follows: "And now, February 25, 1941, fine and costs paid. Defendant committed, in default of payment of fine and costs." It is not entirely clear from this record whether defendant was first committed and later released upon payment of the costs, or not. There may be some question as to whether the fine and costs were voluntarily paid. However, we decide this phase of the case on other grounds.

In support of its position as to the effect of the payment of fine and costs counsel for the Borough of Aliquippa relies upon the cases of Commonwealth ex rel. v. Konas, 57 Pa. Superior Ct. 629, Township of Haverford v. Armstrong et al., 76 Pa. Superior Ct. 152, and Commonwealth v. Greenburg et al., 5 Schuyl. Reg. 16. The last case is based entirely upon the decisions in the two cases previously cited. In addition to these cases there is a later case of City of McKeesport v. Dunn, 83 Pa. Superior Ct. 194, which is to the same general effect. These cases undoubtedly state the law as it existed at the time they were decided. We think, however, that the rule laid down may now be properly modified in view of legislation enacted subsequent to these decisions, except the decision in the case of Commonwealth v. Greenburg et al., supra. The procedure in cases of appeal from summary convictions was regulated originally by the Act of April 17, 1876, P. L. 29. This act was amended by the Acts of April 22, 1905, P. L. 284, July 11, 1917, P. L. 771, and April 1, 1925, P. L. 98. As affected by the last amendment the act is found in 19 PS §1189. Under the provisions of this act an appeal from summary conviction is expressly allowed even though the fine and costs imposed have

already been paid. The act does not require that they should have been paid under duress, and we think is properly construed to cover cases in which payment is voluntarily made. It is true that this act relates to appeals from such convictions, and not specifically to writs of certiorari bringing the record of the proceeding before the court of common pleas. We are satisfied, however, that there is no sound reason for any distinction in this respect between the two proceedings. We think that a writ of certiorari may properly be issued at the instance of a defendant who has already paid the fine and costs imposed upon him.

We think there is another reason for holding in the instant case, and in similar cases, that defendant is not precluded from taking out a writ of certiorari by the fact of his having paid the fine and costs. The rule that he is barred by such payment, in the cases hereinbefore cited and in other cases, is applicable only where the magistrate, before whom the conviction was had, had jurisdiction to hear and try the case and, upon conviction, to impose the penalty. In Reap's Appeal, 88 Pa. Superior Ct. 147, the appellant in the case was adjudged guilty of contempt by the Court of Quarter Sessions of Lackawanna County. He was sentenced to pay a fine of $500 and to be committed until the fine was paid. He paid the fine, and four days later took his appeal to the Superior Court. The appeal was quashed on the ground that the order of the court below was a final judgment and that when payment of the fine was made the case was at an end. In discussing the situation the court used language which we think is pertinent to the case now before us. The court said (p. 150) :

"The appellant was put to his election, he might either appeal, or pay the fine and thus end the whole matter. Such a case is entirely different from one in which the appellant pays a fine in order to be released from imprisonment which the court had, in no case, jurisdiction to impose. 'The distinction is between the

usurpation of a power not conferred, and the irregular or illegal exercise of a jurisdiction possessed': Cunningham v. Mitchell, 67 Pa. 78; Rice v. Burns, 9 Pa. Superior Ct. 63; Commonwealth v. Barbono, 56 Pa. Superior Ct. 641. President Judge Rice in his opinion in the case last cited referred to the distinction between that case and those in which the court had jurisdiction of the subject-matter and the parties and jurisdiction to impose the fine, and in which it was held that having paid the fine the defendant must be held to have voluntarily paid. This case is ruled by the decisions in Commonwealth v. Gipner, 118 Pa. 379; Commonwealth v. Yocum, 37 Pa. Superior Ct. 240; City of McKeesport v. Dunn, 83 Pa. Superior Ct. 194."

If, therefore, the Burgess of Aliquippa was without jurisdiction to try defendant on the charge preferred under the ordinance above recited and to find defendant guilty and impose the penalty, defendant would not be precluded from seeking his remedy by writ of certiorari by reason of the fact that he paid the fine and costs voluntarily, or involuntarily.

We come then to the question as to whether the above-referred-to ordinance of the borough conferred jurisdiction upon the burgess to hear and try the case. We have already stated our conclusion as to this phase of the case. It is contended by the borough that the burgess had jurisdiction and that the ordinance in question was a valid enactment. In support of this position counsel for the borough has called our attention to three cases. The first of these cases is that of Morgan v. Commonwealth, 13 Pitts. (N. S.) 14. In this case Morgan was tried under an ordinance of the City of Pittsburgh. He was charged with selling liquor on Sunday and with keeping a bawdy house. He was found guilty and fined $50 and costs in each case. The cases came before the Court of Common Pleas of Allegheny County on certiorari. The ordinance, among other things, declared that certain houses should be deemed and held to be disorderly houses. With reference to

this provision of the ordinance the court of common pleas, in the opinion of Judge White, made the following comments (pp. 14, 15):

"The ordinance declares that all the classes of houses referred to 'shall be deemed and held to be *disorderly* houses'. If the charge had been simply for keeping a 'disorderly house', and the conviction for that, without specifying more, I doubt whether the conviction could have been sustained. The city councils cannot, by ordinance, declare well-known statutory offenses to be 'disorderly houses', and under that name punish the offenders. Keeping a 'disorderly house' was a common law offense, and is also an offense under our Criminal Code. What constitutes a 'disorderly house' is well defined at common law and also under the statute. It is the keeping and maintaining 'a common, ill-governed, and disorderly house or place, to the encouragement of idleness, gaming, or drinking or other misbehavior, to the common nuisance and disturbance of the neighborhood, or orderly citizens': Act of 31st March, 1860, §42."

This is the view of the effect of such a provision in an ordinance which we have already stated. With reference to the case charging the keeping of a bawdy house the judgment of the mayor was sustained. It was sustained, however, upon the ground that the Council of the City of Pittsburgh was expressly empowered by the Act of 1867 to pass ordinances "to suppress and restrain disorderly houses, houses of ill-fame, etc." It seems clear to us, therefore, that this case does not sustain the position of the Borough of Aliquippa, but rather that which we have already stated.

The second case relied upon by the borough is that of Scranton City v. Tatarunas, 36 Pa. Superior Ct. 205. In this case, defendant was found guilty of maintaining a gambling house in the City of Scranton under the provisions of an ordinance of that city. The case was taken before the Court of Common Pleas of Lackawanna County by writ of certiorari, and that court up-

held the conviction. In the opinion of the court it is stated that the question involved was the constitutionality of the ordinance; that question being raised on the ground that defendant was deprived of trial by jury and that the ordinance was an unreasonable exercise of the police power. The appeal was heard before six judges of the Superior Court. They were equally divided, and by reason of that fact the judgment of the court of common pleas was not reversed. However, the case decides nothing as to the general principle involved; it is only the law of that particular case.

The third case relied upon by the Borough of Aliquippa is that of Commonwealth ex rel. v. Heiman, 127 Pa. Superior Ct. 1. The conviction in this case was under an ordinance of the City of Pittsburgh prohibiting the setting up and maintaining of gambling houses. The Court of Common Pleas of Allegheny County reversed the judgment of the magistrate and the case was appealed to the Superior Court. The question now before us was not decided in this case. The judgment of the court of common pleas was sustained on the ground that the ordinance denied defendant his right to trial by jury. This phase of the case is discussed at great length in the opinion of the court. With reference to the question as to the power of the city to enact an ordinance defining as crimes offenses which are already crimes at common law or by statute, the court merely made a suggestion which is found in the following language (p. 3):

"In the opinion of the court below, the ordinance is invalid because under the terms of the charter act, it does not appear that it was the legislative intent to allow the City of Pittsburgh to prohibit, by ordinance, those crimes which are an offense against the people of the state at large. There is much force in this reasoning, as the charter act specifically provides that its ordinances shall not be inconsistent with the Constitution and laws of this Commonwealth. However, the

majority members of this court are convinced that the ordinance was in violation of appellee's constitutional right of trial by jury."

This also tends to support the conclusion we have reached and hereinbefore stated. We think, therefore, that there is no support for the position of the borough in any of the cases cited.

It is further contended by the borough that the section of the ordinance involved in this proceeding can be supported under the provisions of The General Borough Act of May 4, 1927, P. L. 519, sec. 1202. This section is found in 53 PS § 13367, and reads as follows:

*"Disorderly conduct; ordinances.* To adopt ordinances defining disorderly conduct within the limits of the borough, and to provide in such ordinance for the imposition of penalties for the violation thereof."

We are satisfied, however, that while this provision of the statute may well be held to authorize municipalities to enact ordinances providing for the punishment of certain offenses, it does not authorize the enactment of ordinances providing for the punishment of one maintaining a disorderly house. This is the view taken in the case of New Kensington Borough v. Davis, 11 Westm. 83. The opinion in this case, written by Judge Whitten of the Court of Common Pleas of Westmoreland County, very fully discusses the question involved in that case, and in the case now before us. We think the conclusion reached by him, which is the conclusion we have hereinbefore stated, is sustained by the reasons presented in his opinion. We think the following language found in his opinion is significant and presents the answer to the question now before us (p. 87) :

"If it be contended that a borough,—by virtue of its general power to make such laws as it shall deem necessary for the good order and government of the borough —may enact laws defining and punishing the maintenance of bawdy houses and disorderly houses, then

what is the limit of such authority? Shall boroughs, in like manner, punish burglary, arson, robbery and larceny? All such offenses are foes to the good order and government of the borough."

We think another very significant consideration is that in section 3 of Ordinance no. 415 the Borough of Aliquippa expressly covers the matter of disorderly conduct. This section might well be sustained as a valid exercise of the power conferred by the section of the act above quoted. The fact that in this section the matter of disorderly conduct was covered is a very persuasive argument that section 9 was not intended to cover disorderly conduct, but rather the offense of maintaining a disorderly house, a gambling house, or a bawdy house, all of which constitute common-law and statutory offenses.

We are satisfied, therefore, that section 9 of Ordinance no. 415 of the Borough of Aliquippa is invalid insofar as it attempts to designate as offenses, punishable under the ordinance, maintaining a disorderly house, an ill-governed house, a bawdy house, or a gambling house. It follows that the burgess was wholly without jurisdiction to entertain the prosecution against the above-named defendant, or to try the same, find defendant guilty and impose the penalty prescribed by the ordinance. The whole proceeding is a nullity and should be set aside.