### CHARLES E. NEWBERRY v. THE STATE OF OHIO.

**TRIAL OF PERSON CHARGED WITH ATTEMPTING TO FACILITATE THE ESCAPE OF A PERSON LAWFULLY DETAINED IN THE COUNTY JAIL.**

On the trial of one charged under sec. 6902, Rev. Stat., with having conveyed into a county jail a revolver and other articles useful to effect the escape of a prisoner lawfully detained therein, and with intent to thereby facilitate the escape of such prisoner, the court charged the jury that if the defendant gave the revolver to the prisoner with the intent that he should use it to effect 'an escape while he was out of the jail for a temporary purpose in the custody of the sheriff, and to be returned to the jail when such temporary purpose was accomplished, then, while so temporarily out of the jail he was a prisoner confined in the jail within the meaning of the statute, and such intent would be an intent to facilitate the escape of a prisoner detained in the jail within the meaning of the statute. *Held:* Not error. (Action of trial court in overruling motion in arrest of judgment based on many alleged defects in the indictment, sustained.)

ERROR to the Court of Common Pleas of Lucas county.

PARKER, J. (Orally.)

An indictment was returned by the grand jury of Lucas county, Ohio, against the plaintiff in error, charging him with having conveyed into the jail of said county articles useful to effect the escape of a prisoner detained therein in violation of sec. 6902, Revised Statutes, a part of which, applicable to the case in hand, reads as follows:

"Whoever conveys, or attempts to convey, into * * * a jail, * * * anything useful to effect the escape of any prisoner lawfully detained therein, and with intent thereby to facilitate the escape of such prisoner, whether an escape be effected, or attempted, or not, shall, if such prisoner be detained for felony, be imprisoned in a penitentiary not more than three years nor less than two years," etc.

The indictment after setting forth that one Harry Davis had been charged with the crime of murder in Wood county, Ohio, upon which he had been arrested and ordered into the custody of the sheriff of Wood county to await the action of the grand jury, and for which he had afterwards been indicted by the grand jury; to which indictment he had entered a plea of "Not guilty" whereupon he was remanded to the custody of said sheriff to await his trial, and had been by said sheriff conveyed to Lucas county and confided to the custody of the sheriff of said county for safe keeping, proceeds to charge that "Charles E. Newberry and John Muchler, Jr. afterwards, and while the said Harry Davis was and remained in the custody of the said Charles E. Tual, sheriff of Lucas county, and while so confined in said jail of Lucas county, and before the said Harry Davis had been discharged or released by any order of any court, to-wit: on the 10th day of November, 1896, at the county of Lucas aforesaid, unlawfully, feloniously and purposely did convey into the jail of Lucas county ten steel saws, one revolving pistol, one instrument commonly called a billy, one key, one-half pint of acid and four quarts of whisky, being tools, instruments and things

proper to facilitate the escape, and useful to effect the escape of prisoners lawfully detained therein, and the same being such instruments and things aforesaid, then and there unlawfully and purposely did deliver the same without the consent or privity of the said Charles E. Tual, sheriff of said county of Lucas, to the said Harry Davis who was a prisoner in said jail as aforesaid, and was lawfully detained and confined in said jail for the crime of murder in the first degree as aforesaid, upon the order of the court aforesaid, said crime of murder being a charge of felony under the laws of the state of Ohio, and the said saws, pistol, billy, key, whiskey and acid being such instruments and things as aforesaid, were then and there so conveyed into said jail and delivered to said Harry Davis by the said Charles Newberry and John Muchler, Jr. as aforesaid, with intent then and there to aid and assist the said Harry Davis to escape and attempt to escape.'' The conclusion of the indictment being in the usual form.

Preceding the part of the indictment which I have just read is a history of all the steps taken in the arrest and prosecution of Davis before the return of the indictment against him by the grand jury of Wood county, and it sets forth that the warrant for his arrest was issued by the mayor of the village of Bowling Green in Wood county to the marshal of said village and the sheriff of said county; that ''Richard Biggs and Alf. Farmer were duly appointed special marshals and took oath of office as such special marshals to assist Joseph F. Reed the marshal.'' That said special marshal, Richard Biggs, arrested the said Davis, made his return of said warrant to said mayor, ''whereupon the said Harry Davis while then and there in the custody of said Richard Biggs was then and there, before said Almer R. Campbell, the said mayor as aforesaid, charged in due form of law upon a complaint in writing upon the oath of one Alf. Farmer with having unlawfully, purposely, feloniously, and with deliberate and premeditated malice, killed one Jesse Baker, whereupon the said Harry Davis was duly arraigned before the said mayor upon said charge, and upon hearing said complaint read, peaded not guilty to the same, and then and there did waive an examination and requested to be bound over to the court of common pleas of Wood county, Ohio.'' That he was held accordingly without bail. ''Whereupon the said mayor issued a commitment for said Harry Davis addressed to the keeper of the jail of said county of Wood commanding him to receive the said Harry Davis into his custody in the jail of said county there to remain until he be discharged or dealt with by due course of law, and delivered the said commitment to Joseph F. Reed, the marshal of said village of Bowling Green, and afterwards, upon the same day, the said Joseph F. Reed, marshal as aforesaid, delivered the body of the said Harry Davis then and there into the custody of said Richard Biggs,'' the sheriff and keeper of the jail of Wood county, who detained and confined him in said jail. That afterward ''there being no sufficient jail in said county of Wood in which to safely detain and confine said Harry Davs while awaiting his said trial the said Harry Davis was, together with a copy of the commitment under which he was so detained and confined, delivered by said Richard Biggs, the sheriff of Wood county, to Charles E. Tual, the duly elected, qualified and acting sheriff of Lucas county, Ohio, the said Lucas county being a county in the state of Ohio, which adjoins the said county of Wood.'' That said sheriff of Lucas county received said

Davis and detained and confined him in the Lucas county jail. That afterwards the grand jury of Wood county returned an indictment against said Davis charging him with murder in the first degree in the killing of said Jesse Baker, and that said Harry Davis was arraigned upon the said indictment and, entered a plea of not guilty, thereto; "and it was by the said court ordered that the said Harry Davis be tried at nine o'clock in the forenoon of the 23d day of November, A. D. 1896, and that the said Harry Davis be .and remain in the custody of the sheriff of Wood county to await his trial upon the said 23d day of November, 1896, and thereupon the said sheriff of Wood county delivered the said body of the said Harry Davis back to the sheriff of Lucas county, and the said Harry Davis was by the sheriff of Lucas county again confined and detained in the said jail of Lucas county." Then follows the part of the indictment which I have read, charging Newberry and Muchler with having conveyed certain articles named into the jail of Lucas county with the intent charged.

I have been particular in quoting from the .ndictment to that what I may say upon certain points urged against its sufficiency may be better understood.

No exceptions were taken to this indictment until upon the trial an objection was made to the introduction of certain evidence upon the part of the state, and after the trial (which resulted in the conviction of the plaintiff in error), when, by a motion for a new trial, and a motion for arrest of judgment, the sufficiency of the indictment was challenged.

After the plaintiff in error had plead to the indictment, and the trial of the cause had begun, it was too late to raise objections to any faults in the indictment that amounted to mere defects in its form or in the manner in which the offense was charged. Sections 7249 and 7253, Revised Statutes, *Bartlett* v. *State*, 28 O. S., 669. So we need only consider such alleged defects as may be taken advantage of by demurrer before plea, or by motion in arrest of judgment after trial and conviction. The motion in arrest of judgment in this case sets forth with particularity the defects which plaintiff in error claims, appeared upon the face of this indictment, to wit:—

*First*—That it fails to show that at the time the mayor issued his warrant against Davis there had been filed with him an affidavit in writing charging said Davis with an offense.

*Second*—That it fails. to show the proper and legal appointment of Richard Biggs and Alf. Farmer as special marshals to assist Reed the marshal of said village of Bowling Green.

*Third*—That it shows that said warrant was issued to said marshal and to the sheriff of Wood county, and was served by the special marshal, Richard Biggs, thereby showing that said special marshal had no authority to arrest said Davis.

*Fourth*—Shows that Davis was arrested by said special marshal and was in his custody when he was arraigned before said mayor, and that thereafter said mayor issued a mittimus directed to the marshal of said village, and fails to show how the marshal obtained custody of said Davis.

*Fifth*—It fails to show that said mayor certified to the clerk of the court of common pleas of Wood county, a transcript of his records in the matters alleged to have taken place before him in the case of *The State*

*of Ohio* v. *said Davis*, and fails to show how said court of common pleas acquired jurisdiction over said matter.

*Sixth*—It fails to show that said mayor had jurisdiction of said cause because it fails to show that the crime had been committed within the county of Wood or within the limits of said village.

*Seventh*—It fails to show that said Davis, after having been put into the custody of the sheriff of Lucas county, was delivered to the sheriff of Wood county by virtue of a writ of habeas corpus issued by the court of common pleas of Wood county, as provided in section 7386, Revised Statutes.

*Eighth*—It fails to show that after said Davis was arraigned and entered his plea of "not guilty," to the indictment returned against him by the grand jury of Wood county the sheriff of Wood county found the jail of said county to be insufficient to hold the body of said Davis, and also fails to show that said sheriff found the jail of Lucas county most secure as required by section 7382 Revised Statutes.

*Ninth*—It fails to show that after the arraignment and plea of said Davis he was delivered by the sheriff of Wood county to the sheriff of Lucas county with the copy of commitment by virtue of which said sheriff of Wood county held him as required by section 7383, Revised Statutes.

*Tenth*—That it fails to show on its face that whisky is a thing useful or proper to effect the escape of said Davis.

*Eleventh*—It fails to show that it was intended by said defendant Newberry to aid and assist the said Harry Davis to escape or attempt to escape from said jail of the county of Lucas.

*Twelfth*—It fails to show that at the time said things were alleged to have been conveyed into said jail the said Newberry knew that said Davis was lawfully confined in said jail.

*Thirteenth*—It fails to show that at the time the sheriff of Wood county first delivered the body of said Davis to the sheriff of Lucas county, he tendered to said sheriff of Lucas county the fees provided by section 7384, Revised Statutes, or that such fees were tendered the second time said Davis was removed to the jail of Lucas county.

It is urged by counsel for plaintiff in error that because of these alleged apparent irregularities in the steps taken to effect the arrest and detention of the prisoner Davis, and of the alleged failure of the indictment to show certain steps necessary to the legality of his arrest and detention, the alleged assistance given him by the plaintiff in error to effect his escape was not, or could not have been illegal or criminal. In short, that it not being charged or shown that Davis was legally detained in the jail of Lucas county, the plaintiff in error might have lawfully conveyed into said jail articles useful to effect his escape while he was there detained. It is contended that the true criterion for determining whether the detention of Davis was so far unlawful as to justify acts which would be a violation of section 6902 if the detention were legal, is to be found by inquiry and finding whether the discharge of Davis from such custody could have been effected by a writ of habeas corpus; that is, if his discharge could have been thus effected then any act or effort to effect his escape or liberation would have been lawful. Without endorsing this proposition we are willing to resort to this criterion, since, by so doing, we cannot fall into any error that will be prejudicial to the plaintiff in error.

Our views and conclusions upon the several alleged defects in the indictment touching the proceedings leading up to the detention of Davis in the Lucas county jail, make it unnecessary for us to discuss them severally or in detail.

It has been shown that by process or means, regular or irregular, Davis was brought before the mayor of Bowling Green, and was arraigned upon a written charge of murder in the first degree, and that thereupon he was committed to the custody of the marshal of the village who delivered him into the custody of the sheriff and jailer of Wood county to be detained until discharged according to law, and that, upon this order of commitment, a mittimus was accordingly issued to said marshal. That this action was taken upon Davis having entered his plea to the charge and having waived examination and requested that he be bound over to court.

It has also been shown that the indictment charges that when Davis was delivered by the sheriff of Wood county into the custody of the sheriff of Lucas county the said Charles E. Tual received from the sheriff of Wood county a copy of said commitment.

We hold that thereafter his discharge could not have been effected by habeas corpus on account of any illegality or irregularity in or about his arrest or any of the proceedings prior to said commitment.

In Dows' case, 18 Pa. St., 37, the law is laid down in the syllabus as follows: "In the case of the escape of the fugitive from justice from this state to Michigan, after having been charged in this state by indictment with forgery, his arrest in the latter state without legal authority possessed by those who made it will not entitle the prisoner to discharge before prosecution, his release not being demanded by the executive of Michigan." Dows was a fugitive from justice from the county of Allegheny, Pennsylvania, being at the time he fled, charged by indictment with forgery and with obtaining money under false pretenses, and it having been ascertained that he was in the state of Michigan, a requisition was made by the governor of the state of Pennsylvania upon the governor of Michigan, upon which the governor of Michigan issued a warrant for the arrest of Dows; but he was not arrested in pursuance of that. He was arrested at Detroit by the officers of the steamer "Ocean" when on board said boat and was carried away into the state of Pennsylvania and there delivered to the sheriff of Erie county and conveyed to Pittsburgh and lodged in jail. The arrest was without a warrant and by persons not authorized to make the arrest. That the arrest was illegal was assumed by the court deciding the case, and it was said that if the prisoner had been demanded by the governor of the state of Michigan the Pennsylvania authorities would probably have been required to surrender him up to the state of Michigan. But it was held that the rights of sovereignty of that state did not reside in the prisoner and he could not assert them; and that, on his own account he could not assert the want of authority for, or the illegality of his arrest as a reason why he should not be detained and prosecuted. In the opinion of the court many cases are cited in support of this doctrine and it is said that it has been formally established and is founded on a principle of universal law.

Sections 5729 and 5741, Rev. Stat., (being parts of the chapter on habeas corpus), seem to us, standing alone, to furnish sufficient authority in support of this conclusion.

Section 5729. ''If it appear that the person to be restrained of his liberty is in custody of an officer under process issued by a court or magistrate, or by virtue of the judgment or order of a court of record, and that the court or magistrate had jurisdiction to issue the process, render the judgment, or make the order, the writ shall not be allowed; or, if the jurisdiction appear after the writ is allowed, the person shall not be discharged, by reason of any informality or defect in the process, judgment or order.''

Section 5741. ''When the judge has examined into the cause of caption and detention of the person so brought before him, and is satisfied that he is unlawfully imprisoned or detained, he shall forthwith discharge him from confinement. On such examination the judge may disregard matters of form or technicalities in any mittimus or order of commitment by a court or officer authorized to commit by law.''

See also the cases of *Hatch* v. *Sheriff*, 1 Ohio Circ. Dec. 421; *Madden* v. *Smeltz*, 1 Ohio Circ. Dec., 424; *State ex rel.* v. *Hamilton*, 2 Ohio Circ. Dec., 6; *In re George*, 3 Ohio Circ. Dec.. 000; and *Ex parte Mosler*, 4 Ohio Circ. Dec., 000; which are holdings under these sections, more or less in point, but which we will not now take the time to discuss.

The indictment sets forth that an order of commitment was issued, etc. It must be presumed that this was in due form which required, (as provided by sec. 7188, Rev. Stat.,) that the prisoner should be received into the custody of the officer ''in the jail of the county aforesaid, there to remain until discharged by due course of law.''

If the proceedings in transferring the custody of Davis to the sheriff and jail of Lucas county were otherwise lawful we hold that his detention of the prisoner could have been justified under this warrant or demand, but, assuming without deciding that the charge in the indictment that Davis was confined and held ''upon the order of the court aforesaid,'' (to-wit: Upon the order for his detention made by the court of common pleas after he had entered his plea to the indictment,) would preclude the state from relying, in this case, upon any other order or warrant of commitment which had come into the hands of the sheriff of either county, we proceed to consider how the matter stands upon that order of the court.

We think it too plain to require extended argument or citation of authorities, that after Davis had entered his plea to the indictment without taking any exceptions to the steps in his prosecution preceding the indictment, it was too late for him to make such objections, even if such steps had before then been open to objection; and that, upon his entering such plea it was within the power of the court to order him committed to await further steps in the case. Indeed, the court was not authorized in the case of murder in the first degree, to make any other order; and we hold that this order of the court was sufficient in itself to justify the detention of the prisoner by the proper custodian at a proper place, even though upon it or in pursuance of it, no written authority had been placed in the hands of such officer. That if Davis had sought his liberation by habeas corpus proceedings it would have been a good and sufficient answer to his petition for the officer to set forth the pendency of the prosecution and the order of the court for his detention. Even if this is not correct it does not follow that the detention of Davis would have been unlawful, for the warrant or order of commitment

might have issued after the writ of habeas corpus had been allowed, and in such case it would afford a justification for the holding of the prisoner when the matter should come on to be heard in the *habeas corpus* proceeding; and we have no doubt an attempt to hold the sheriff or jailer liable for false imprisonment in the interim would be defeated by an exhibition of this order of the court. Surely the plaintiff in error can not claim greater rights, privileges or immunities in the premises for Davis and as a shield for himself than Davis could have availed himself of on his own account. In support of our conclusions upon this point we cite, *The People ex rel. James Trainor, appellant* v. *Samuel Baker, keeper, etc., respondent,* 89 N. Y., 460. A case (the title of which has escaped me) in 114 U. S., 417, and 9th American & English Encyclopedia of Law, 190.

The contention that because there was irregularity in the arrest and preliminary examination of Davis, and a failure upon the part of the magistrate to certify a transcript from the records of his proceedings to the court of common pleas, the grand jury was without authority in the premises, so that the indictment was unauthorized and invalid, and the imprisonment of Davis upon it was consequently unlawful, we deem utterly without foundation. It is entirely clear that the indictment needs no such support, that the grand jury was authorized to inquire into the matter without regard to whether there was or was not such preliminary examination, and that no possible irregularity, informality or illegality in the steps before, or proceedings upon the part of the magistrate could in any way affect the validity of the indictment or the detention of the prisoner in consequence of such indictment.

It is also urged that because the prisoner was not returned to Wood county to plead to the indictment by virtue of a writ of *habeas corpus*, as provided by section 7386 of the Revised Statutes, his conveyance to Wood county on that occasion was unlawful, and that it follows that his subsequent detention by the sheriff of Lucas county in the Lucas county jail was also unlawful. We do not concur in the view that the transportation of the prisoner from the jail of Lucas county to the presence of the court in Wood county to plead to the indictment was unlawful because no writ of habeas corpus was issued for that purpose. The sheriff of Wood county was authorized to produce the prisoner to plead to the indictment on that occasion, by virtue of the order of the court before adverted to, precisely as if we were bringing him from the Wood county jail to the court room for the same purpose; and while the sheriff of Lucas county might have insisted upon a writ of habeas corpus before surrendering the prisoner to the custody of the sheriff of Wood county, yet, his not having insisted upon it did not in any way affect the legality of the detention and transportation of the prisoner from the Lucas county jail to the Wood county court house and his return to the Lucas county jail; but, if it were true that on this occasion the prisoner Davis was unlawfully surrendered, transported and returned, it does not follow that his subsequent detention by the sheriff of Lucas county would be illegal. Such act, even if unlawful, would not be so incurable and of such permanent and extensive influence as to vitiate all prior and all subsequent steps in the course of prosecution. It has been said by way of illustration that if the sheriff of Lucas county had taken the prisoner across the line into the state of Michigan he could not have there lawfully restrained him of his liberty because of

the lack of authority of such sheriff in that state. Conceding that this is true, if the sheriff had by any means secured the return of the prisoner to Lucas county he might there take and hold him, and the fact that the prisoner had been unlawfully detained for a season in Michigan would not affect the legality of such subsequent taking and holding.

Section 7382, Revised Statutes, reads in part as follows: "The sheriff or person acting as such in any county having no jail or no sufficient jail shall convey any person charged with the commission of an offense or sentenced to imprisonment in the county jail, or in custody upon civil process, to the jail of such adjoining county as he deems most convenient and secure."

It is contended that because the indictment in this case does not set forth that the sheriff of Wood county deemed the jail of Lucas county most secure, therefore it does not appear that Davis was lawfully imprisoned in Lucas county, and that it follows that the plaintiff in error could not have been guilty of a violation of law in conveying into said jail and putting into the possession of said Davis materials and things useful to effect his escape. If it should appear that the sheriff of Wood county did not deem the jail of Lucas county most secure for the purpose mentioned, would it follow that the imprisonment of Davis therein would be so far illegal that a person might lawfully do what is charged against the plaintiff in error? We think not.

Coming back to the test suggested: If Davis had applied to a court for a writ of *habeas corpus* to secure his release from such jail and had alleged as a ground that the sheriff of Wood county did not deem that jail most secure for the purpose stated what would have resulted from this?

If a court should so far consider it as to admit proof of the fact and as to regard it as something affecting the rights of the petitioner in the premises, certainly it would not go so far as to discharge him absolutely from custody and would go no farther than to order his transportation to a proper and lawful place of confinement. We doubt if it is a matter touching or affecting the rights of the prisoner at all, and we are clear that it is not a necessary averment in this case, and that, if it were contained in the indictment it would not be transversable; it would not be necessary to prove it, it would be in short, mere surplusage; and, I may as well say here that from our conclusion that the prisoner was lawfully held under the order made upon his entering his plea to his indictment it follows that all of the averments in the indictment in this case of the steps leading up to the indictment of Davis were unnecessary; but since they are there we do not say that they need not be proved as stated.

On the point that the indictment fails to charge that the plaintiff in error knew that Harry Davis was lawfully confined in the Lucas county jail, we deem it sufficient to cite the case of *The State* v. *Hilton*, 26 Mo., 199, in which the court say: "That the custody of a person in the hands of a public officer would imply notice that the prisoner was lawfully held and the rescue would be at the peril of the party making it." This states a general principle applicable to the case at bar.

It is also urged that the indictment is defective:

*First*—Because it shows on its face that whiskey is not a thing useful or proper to effect the escape of a prisoner; and *Second*—It does not appear affirmatively, by proper averments that whiskey could or might have been useful to effect such purpose in this case. Counsel undertake

to make a distinction between such articles as appear naturally to be useful for such purpose and such as do not appear to be so but may be shown to have been so in a particular case. Or, otherwise stated, between such as are *per se* useful for the purpose stated, and such as may be shown by proper averments to have been useful for such purpose, and it is said that such articles as explosives, firearms and saws come within the first category, while articles like water, whiskey, etc., no apparent use of which could be made for the purpose stated, come within the second category. No authority is cited in support of this attempted distinction, and we are of the opinion that there is no basis in reason or authority for it, and that a general averment on the subject like that in this indictment, following the language of the statute, is sufficient; but of course the proof must show and satisfy the jury that the articles named were, or may have been useful for the purpose of effecting the escape of the prisoner. The testimony in this case tended to show that the whiskey furnished by Newberry to Davis was used to stupefy prisoners and others about the jail so that they might not be aware of the work being done by Davis to effect his escape—sawing at the windows, etc., and that Newberry knew of this use. We think the question was properly submitted to the jury as a question of fact under proper instructions, though we will not say that the evidence as to the whiskey alone was sufficient to support the verdict.

The point is also made against the indictment and against the evidence and the charge of the court that it must be averred and proved that the intent of the plaintiff in error was to facilitate the escape of the prisoner Davis *from the Lucas county jail*. This is not charged in the indictment and the proof tends to show that the articles conveyed by the plaintiff in error to the jail were to be used by the prisoner Davis while he was temporarily outside the walls of the prison. The charge of the court upon the subject to which exceptions are taken reads as follows:

"But if the defendant gave the revolver to Davis with the intent that he should use it to effect an escape while he was out of the jail for a temporary purpose in the custody of the sheriff of Lucas county, and to be returned to the jail when such temporary purpose was accomplished, then while so out of the jail he was a prisoner confined in the Lucas county jail within the meaning of the statute, and such intent would be an intent to facilitate the escape of a prisoner detained in the jail, within the meaning of the statute."

We concur in this construction of the law.

We have attempted to notice the principal objections urged against this indictment—those that seemed to us to be most worthy of consideration. We cannot touch upon every point urged against this conviction, as the record, which is very voluminous, is bristling with exceptions, and proves that counsel for the plaintiff in error have been alert and careful to preserve his rights and save every possible question; and we feel like commending the care and industry, the indefatigable efforts of counsel for the plaintiff in error in his behalf, not only in this court, but, as made apparent by this record, in the court below.

We find no errors prejudicial to the plaintiff in error occurring upon the trial of the case either in the admission or rejection of evidence or otherwise; and we find no error in the charge of the court, or in the action of the court in refusing to charge certain propositions requested. It would serve no good purpose to review the evidence in this case, but

it is sufficient to say that we have read it carefully and are of the opinion that it supports the verdict. In a word, we find no error in this record, and therefore the judgment of the court below is affirmed.

The opinion of Judge Pugsley in passing upon the motion for a new trial and the motion in arrest of judgment has been handed to us. We did not consider it, or even look at it until we had reached our conclusions in this case, when, upon its perusal, we are pleased to say that we found the reasoning and conclusions of the learned judge to agree with our own. As to all points discussed and decided by him, though not specially referred to in this opinion, we concur in his conclusions.

I wish to say in conclusion that the defendant appears to have been very ably defended, and to have had a fair trial. The crime, under the circumstances, was one that was especially reprehensible in view of the fact that the prisoner Davis was in the custody of the plaintiff in error who was bound to see that he was safely kept and held, therefore there is more moral turpitude attached to the act than there would have been if it had been committed by a person not intrusted with the custody of the prisoner, a person having no duty devolving upon him in the premises; and we think that the judgment and sentence is moderate under the circumstances.