# EX PARTE WILSON.

### ORIGINAL.

Submitted December 15, 1884.—Decided March 30, 1885.

This court cannot discharge on habeas corpus à person imprisoned under the sentence of a Circuit or District Court in a criminal case, unless the sentence exceeds the jurisdiction of that court, or there is no authority to hold the prisoner under the sentence.

The provision of Rev. Stat. § 1022, authorizing certain offences to be prosecuted either by indictment or by information, does not preclude the prosecution by information of such other offences as may be so prosecuted consistently with the Constitution and laws of the United States.

In the record of a general conviction and sentence upon two counts, one of which is good, a misrecital of the verdict as upon the other count only, in stating the inquiry whether the convict had aught to say why sentence should not be pronounced against him, is no ground for discharging him on habeas corpus.

In the record of a judgment of a District Court, sentencing a person convicted in one State to imprisonment in a prison in another State, the omission to state that there was no suitable prison in the State in which he was convicted, and that the Attorney-General had designated the prison in the

other State as a suitable place of imprisonment, is no ground for discharging the prisoner on habeas corpus.

A certified copy of the record of a sentence to imprisonment is sufficient to authorize the detention of the prisoner, without any warrant or mittimus.

A person sentenced to imprisonment for an infamous crime, without having been presented or indicted by a grand jury, as required by the Fifth Amendment of the Constitution, is entitled to be discharged on habeas corpus.

A crime punishable by imprisonment for a term of years at hard labor is an infamous crime, within the provision of the Fifth Amendment of the Constitution, that "no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury."

This was a petition for a writ of habeas corpus, presented to this court by a man confined in the House of Correction at Detroit in the State of Michigan, under a sentence to be imprisoned there for fifteen years at hard labor, passed by the District Court of the United States for the Eastern District of Arkansas, upn an information filed by the District Attorney for that district.

The record of the conviction and sentence, a copy of which was annexed to the petition, showed the following case:

The information, which was filed by leave of the court, contained two counts: The first count upon Rev. Stat. § 5430, for unlawfully having in possession, with intent to sell, an obligation engraved and printed after the similitude of securities issued under authority of the United States, to wit, of an interest-bearing coupon bond of the United States; and the second count upon § 5431, for passing, with intent to defraud, a counterfeited interest-bearing coupon bond of the United States; and each count alleging that the bond was in the words and figures of a copy attached to the indictment and made part thereof. That copy was of an instrument purporting to be a bond of the United States Silver Mining Company of Denver City, Colorado, having printed at its head the words "THE UNITED STATES" in large and conspicuous capitals, followed on a lower line by the words "SILVER MINING COMPANY OF DENVER CITY, COLORADO" in much smaller and less distinct type, and bearing the signatures of "R. E. Hullson, Pres't," and "J. H. Mayson, Sec'y," and otherwise numbered and lettered very much like a genuine bond of the United States.

The defendant filed a general demurrer to the information, which was overruled by the court; and he then pleaded not guilty, and was tried by a jury, who returned a general verdict of guilty; and he moved for a new trial, for insufficiency of the evidence to support the verdict.

The rest of the record (a certified copy of which was the only paper delivered to the keeper of the house of correction) stated that the defendant was brought to the bar in the custody of the marshal, and his motion for a new trial overruled, "and the said defendant, being now inquired of by the court if he have aught to say why the judgment and sentence of the court should not now be pronounced against him upon the verdict and finding of the jury in this case, finding him guilty of passing a counterfeit United States bond, and saying nothing further than he hath already said; and the court being now well advised in the premises; it is therefore considered, ordered, adjudged and sentenced that said defendant, James S. Wilson, do pay to the United States a fine of five thousand dollars for said offence and all the costs of this proceeding, and that the United States have execution therefor, and that he be imprisoned for and during the term of fifteen years at hard labor in the House of Correction at Detroit, Michigan, and that the said marshal of this district convey the said prisoner to the house of correction aforesaid, and deliver him to the custody of the keeper thereof; and that the clerk of this court make out for said marshal two copies of this judgment and sentence, duly certified under the seal of this court, one of which the said marshal shall deliver to the keeper of said house of correction, and the other return and file in this court, with the receipt of said keeper thereon."

The offence described in Rev. Stat. § 5430 is punishable by a fine of not more than $5,000, or by imprisonment at hard labor not more than fifteen years, or by both; and the offence described in § 5431 is punishable by a like fine and imprisonment.

The petitioner alleged in his petition, and contended in argument, that his imprisonment was illegal, upon the following grounds:

First, That in excess of the power of the court, and in viola-

tion of the Fifth Amendment of the Constitution, he had been held to answer for an infamous crime, and punished by a fine of $5,000 and imprisonment for the term of fifteen years at hard labor, without presentment or indictment by a grand jury.

Second, That he was held under a judgment void, and in excess of the power of the court, upon an information for a crime which was not committed, against the provisions of chapter 7 of the title Crimes in the Revised Statutes, in which cases informations were expressly authorized, and to which they were impliedly restricted, by § 1022 of those statutes.

Third, That the judgment was void and in excess of the power of the court, because the conviction and the sentence were for different offences, the conviction being for having in possession a bond of a mining company in the similitude of a United States bond, and the sentence being for passing a counterfeit United States bond.

Fourth, That he was held by the keeper of the Detroit House of Correction without authority of law, because the order of the court for his imprisonment did not show that the court had determined two questions of fact which were made by Rev. Stat. §§ 5541, 5546, conditions precedent to the exercise of its power to sentence to a prison outside the State of Arkansas, namely, 1st, that there was no suitable prison in that State, and, 2d, that the Attorney-General had designated the Detroit House of Correction as a suitable penitentiary in another State.

Fifth, That the keeper had no warrant or mittimus authorizing him to hold the prisoner, as required by Rev. Stat. § 1028.

*Mr. Alfred Russell* for petitioner.

*Mr. Assistant Attorney-General Maury, contra.*

MR. JUSTICE GRAY, after stating the facts in the foregoing language, delivered the opinion of the court.

It is well settled by a series of decisions that this court, hav-

ing no jurisdiction of criminal cases by writ of error or appeal, cannot discharge on habeas corpus a person imprisoned under the sentence of a Circuit or District Court in a criminal case, unless the sentence exceeds the jurisdiction of that court, or there is no authority to hold him under the sentence. *Ex parte Watkins*, 3 Pet. 193, and 7 Pet. 568; *Ex parte Lange*, 18 Wall. 163; *Ex parte Parks*, 93 U. S. 18; *Ex parte Siebold*, 100 U. S. 371; *Ex parte Curtis*, 106 U. S. 371; *Ex parte Carll*, 106 U. S. 521; *Ex parte Yarbrough*, 110 U. S. 651; *Ex parte Crouch*, 112 U. S. 178; *Ex parte Bigelow*, 113 U. S. 328.

None of the grounds on which the petitioner relies, except the first, require extended discussion.

The provision of Rev. Stat. § 1022, derived from the Civil Rights Act of May 30, 1870, ch. 114, § 8, authorizing certain offences to be prosecuted either by indictment or by information, does not preclude the prosecution by information of other offences of such a grade as may be so prosecuted consistently with the Constitution and laws of the United States.

The objection of variance between the conviction and the sentence is not sustained by the record. The first count is for unlawfully having in possession, with intent to sell, an obligation engraved and printed after the similitude of securities issued under authority of the United States, and the copy annexed and referred to in that count is of such an obligation. Both the verdict and the sentence are general, and therefore valid if one count is good. *United States* v. *Snyder*, 112 U. S. 216. The mis-recital of the verdict, in the statement of the intermediate inquiry whether the prisoner had aught to say why sentence should not be pronounced against him, is no more than an irregularity or error, not affecting the jurisdiction of the court.

The omission of the record to state, as in *Ex parte Karstendick*, 93 U. S. 396, that there was no suitable penitentiary within the State, and that the Attorney-General had designated the House of Correction at Detroit as a suitable place of imprisonment outside the State, is even less material.

The certified copy of the record of the sentence to imprisonment in the Detroit House of Correction, if valid upon its

face, is sufficient to authorize the keeper to hold the prisoner, without any warrant or mittimus. *People* v. *Nevins,* 1 Hill (N. Y.), 154.

But if the crime of which the petitioner was accused was an infamous crime, within the meaning of the Fifth Amendment of the Constitution, no court of the United States had jurisdiction to try or punish him, except upon presentment or indictment by a grand jury.

We are therefore necessarily brought to the determination of the question whether the crime of having in possession, with intent to sell, an obligation engraved and printed after the similitude of a public security of the United States, punishable by fine of not more than $5,000, or by imprisonment at hard labor not more than fifteen years, or by both, is an infamous crime, within the meaning of this Amendment of the Constitution.

The first provision of this Amendment, which is all that relates to this subject, is in these words : " No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger."

The scope and effect of this, as of many other provisions of the Constitution, are best ascertained by bearing in mind what the law was before.

Mr. William Eden (afterward Lord Auckland) in his Principles of Penal Law, which passed through three editions in England and at least one in Ireland within six years before the Declaration of Independence, observed, " There are two kinds of infamy ; the one founded in the opinions of the people respecting the mode of punishment ; the other in the construction of law respecting the future credibility of the delinquent." Eden's Principles of Penal Law, ch. 7, § 5.

At that time, it was already established law, that the infamy which disqualified a convict to be a witness depended upon the character of his crime, and not upon the nature of his punishment. *Pendock* v. *McKinder,* Willes, 665 ; Gilb. Ev. 143 ; 2 Hawk. ch. 46, § 102; *The King* v. *Priddle,* 1 Leach (4th ed.)

442. The disqualification to testify appears to have been limited to those adjudged guilty of treason, felony, forgery, and crimes injuriously affecting by falsehood and fraud the administration of justice, such as perjury, subornation of perjury, suppression of testimony by bribery, conspiring to accuse one of crime, or to procure the absence of a witness; and not to have been extended to cases of private cheats, such as the obtaining of goods by false pretences, or the uttering of counterfeit coin or forged securities. 1 Greenl. Ev. § 373; *Utley* v. *Merrick*, 11 Met. 302; *Fox* v. *Ohio*, 5 How. 410, 433, 434.

But the object and the very terms of the provision in the Fifth Amendment show that incompetency to be a witness is not the only test of its application.

Whether a convict shall be permitted to testify is not governed by a regard to his rights or to his protection, but by the consideration whether the law deems his testimony worthy of credit upon the trial of the rights of others. But whether a man shall be put upon his trial for crime without a presentment or indictment by a grand jury of his fellow citizens depends upon the consequences to himself if he shall be found guilty

By the law of England, informations by the Attorney-General, without the intervention of a grand jury, were not allowed for capital crimes, nor for any felony, by which was understood any offence which at common law occasioned a total forfeiture of the offender's lands, or goods, or both. 4 Bl. Com. 94, 95, 310. The question whether the prosecution must be by indictment, or might be by information, thus depended upon the consequences to the convict himself. The Fifth Amendment, declaring in what cases a grand jury should be necessary, and in effect affirming the rule of the common law upon the same subject, substituting only, for capital crimes or felonies, "a capital or otherwise infamous crime," manifestly had in view that rule of the common law, rather than the rule on the very different question of the competency of witnesses.

The leading word "capital" describing the crime by its punishment only, the associated words "or otherwise infamous crime" must, by an elementary rule of construction, include crimes subject to any infamous punishment, even if they should

be held to include also crimes infamous in their nature, independently of the punishment affixed to them.

A reference to the history of the proposal and adoption of this provision of the Constitution confirms this conclusion. It had its origin in one of the Amendments, in the nature of a bill of rights, recommended by the Convention by which the State of Massachusetts in 1788 ratified the original Constitution, and as so recommended was in this form: " No person shall be tried for any crime, by which he may incur an infamous punishment, or loss of life, until he be first indicted by a grand jury; except in such cases as may arise in the government and regulation of the land and naval forces." Journal Massachusetts Convention 1788 (ed. 1856) 80, 84, 87 ; 2 Elliot's Debates, 177. As introduced by Mr. Madison in 1789 at the first session of the House of Representatives of the United States, it stood thus : " In all crimes punishable with loss of life or member, presentment or indictment by a grand jury shall be an essential preliminary." Being referred to a committee, of which Mr. Madison was a member, it was reported back in substantially the same form in which it was afterwards approved by Congress, and ratified by the States. 1 Annals of Congress, 435, 760.

Mr. Dane, one of the most learned lawyers of his time, and who as a member of the Continental Congress took a principal part in framing the Ordinance of 1787 for the government of the Northwest Territory, assumes it as unquestionable that, by virtue of the Amendment of the Constitution, informations " cannot be used where either capital or infamous punishment is inflicted." 7 Dane Ab. 280. Judge Cooley has expressed a similar opinion. Cooley, Principles of Constitutional Law, 291.

The only mention of informations in the first Crimes Act of the United States is in the clause providing that no person "shall be prosecuted, tried or punished for an offence, not capital, nor for any fine or forfeiture under any penal statute, unless the indictment or information for the same shall be found or instituted within two years from the time of committing the offence, or incurring the fine or forfeiture." Act of April

30, 1790, ch. 9, § 32; 1 Stat. 119. For very many years after-wards, informations were principally, if not exclusively, used for the recovery of fines and forfeitures, such as those imposed by the revenue and embargo laws. Acts of July 31, 1789, ch. 5, § 27, 1 Stat. 43; March 26, 1804, ch. 40, § 3, and March 1, 1809, ch. 24, § 18, 2 Stat. 290, 532; *United States* v. *Hill*, 1 Brock. 156, 158; *United States* v. *Mann*, 1 Gallison, 3, 177; *Walsh*. v. *United States*, 3 Woodb. & Min. 341. Mr. Justice Story, writing in 1833, said: "This process is rarely recurred to in America; and it has never yet been formally put into operation by any positive authority of Congress, under the national Government, in mere cases of misdemeanor; though common enough in civil prosecutions for penalties and forfeitures." Story on the Constitution, § 1780.

The informations which passed without objection in *United States* v. *Isham*, 17 Wall. 496, and *United States* v. *Buzzo*, 18 Wall. 125, were for violations of the stamp laws, punishable by fine only. And the offence which Mr. Justice Field and Judge Sawyer held in *United States* v. *Waller*, 1 Sawyer, 701, might be prosecuted by information, is there described as "an offence not capital or otherwise infamous," and, as appears by the statement of Judge Deady in *United States* v. *Block*, 4 Sawyer, 211, 213, was the introduction of distilled spirits into Alaska, punishable only by fine of not more than $500, or imprisonment not more than six months. Act of July 27, 1868, ch. 273, § 4; 15 Stat. 241.

Within the last fifteen years, prosecutions by information have greatly increased, and the general current of opinion in the Circuit and District Courts has been towards sustaining them for any crime, a conviction of which would not at common law have disqualified the convict to be a witness. *United States* v. *Shepard*, 1 Abbott U. S. 431; *United States* v. *Maxwell*, 3 Dillon, 275; *United States* v. *Block*, 4 Sawyer, 211; *United States* v. *Miller*, 3 Hughes, 553; *United States* v. *Baugh*, 4 Hughes, 501; *United States* v. *Yates*, 6 Fed. Rep. 861; *United States* v. *Field*, 21 Blatchford, 330; *In re Wilson*, 18 Fed. Rep. 33.

But, for the reasons above stated, having regard to the ob-

ject and the terms of the first provision of the Fifth Amendment, as well as to the history of its proposal and adoption, and to the early understanding and practice under it, this court is of opinion that the competency of the defendant, if convicted, to be a witness in another case is not the true test; and that no person can be held to answer, without presentment or indictment by a grand jury, for any crime for which an infamous punishment may be imposed by the court.

The question is whether the crime is one for which the statutes authorize the court to award an infamous punishment, not whether the punishment ultimately awarded is an infamous one. When the accused is in danger of being subjected to an infamous punishment if convicted, he has the right to insist that he shall not be put upon his trial, except on the accusation of a grand jury.

Nor can we accede to the proposition, which has been sometimes maintained, that no crime is infamous, within the meaning of the Fifth Amendment, that has not been so declared by Congress. See *United States* v. *Wynn*, 3 McCrary, 266, and 11 Fed. Rep. 57; *United States* v. *Petit*, 11 Fed. Rep. 58; *United States* v. *Cross*, 1 McArthur, 149. The purpose of the Amendment was to limit the powers of the legislature, as well as of the prosecuting officers, of the United States. We are not indeed disposed to deny that a crime, to the conviction and punishment of which Congress has superadded a disqualification to hold office, is thereby made infamous. *United States* v. *Waddell*, 112 U. S. 76, 82. But the Constitution protecting every one from being prosecuted, without the intervention of a grand jury, for any crime which is subject by law to an infamous punishment, no declaration of Congress is needed to secure, or competent to defeat, the constitutional safeguard.

The remaining question to be considered is whether imprisonment at hard labor for a term of years is an infamous punishment.

Infamous punishments cannot be limited to those punishments which are cruel or unusual; because, by the Seventh Amendment of the Constitution, " cruel and unusual punishments," are wholly forbidden, and cannot therefore be lawfully

inflicted even in cases of convictions upon indictments duly presented by a grand jury.

By the first Crimes Act of the United States, forgery of public securities, or knowingly uttering forged public securities with intent to defraud, as well as treason, murder, piracy, mutiny, robbery, or rescue of a person convicted of a capital crime, was punishable with death; most other offences were punished by fine and imprisonment; whipping was part of the punishment of stealing or falsifying records, fraudulently acknowledging bail, larceny of goods, or receiving stolen goods; disqualification to hold office was part of the punishment of bribery; and those convicted of perjury or subornation of perjury, besides being fined and imprisoned, were to stand in the pillory for one hour, and rendered incapable of testifying in any court of the United States. Act of April 30, 1790, ch. 9; 1 Stat. 112–117; Mr. Justice Wilson's Charge to the Grand Jury in 1791, 3 Wilson's Works, 380, 381.

By that act, no provision was made for imprisonment at hard labor. But the punishment of both fine and imprisonment at hard labor was prescribed by later statutes, as, for instance, by the act of April 21, 1806, ch. 49, for counterfeiting coin, or uttering or importing counterfeit coin; and by the act of March 3, 1825, ch. 65, for perjury, subornation of perjury, forgery and counterfeiting; uttering forged securities or counterfeit money, and other grave crimes. 2 Stat. 404; 4 Stat. 115. Since the punishments of whipping and of standing in the pillory were abolished by the act of February 28, 1839, ch. 36, § 5; 5 Stat. 322; imprisonment at hard labor has been substituted for nearly all other ignominious punishments, not capital. And by the act of March 3, 1825, ch. 65, § 15, re-enacted in Rev. Stat. § 5542, any sentence of imprisonment at hard labor may be ordered to be executed in a State prison or penitentiary. 4 Stat. 118.

What punishments shall be considered as infamous may be affected by the changes of public opinion from one age to another. In former times, being put in the stocks was not considered as necessarily infamous. And by the first Judiciary Act of the United States, whipping was classed with moderate

fines and short terms of imprisonment in limiting the criminal jurisdiction of the District Courts to cases "where no other punishment than whipping, not exceeding thirty stripes, a fine not exceeding one hundred dollars, or a term of imprisonment not exceeding six months, is to be inflicted." Act of September 24, 1789, ch. 20, § 9; 1 Stat. 77. But at the present day either stocks or whipping might be thought an infamous punishment.

For more than a century, imprisonment at hard labor in the State prison or penitentiary or other similar institution has been considered an infamous punishment in England and America.

Among the punishments "that consist principally in their ignominy," Sir William Blackstone classes "hard labor, in the house of correction or otherwise," as well as whipping, the pillory or the stocks. 4 Bl. Com. 377. And Mr. Dane, while treating it as doubtful whether confinement in the stocks or in the house of correction is infamous, says, "Punishments, clearly infamous, are death, gallows, pillory, branding, whipping, confinement to hard labor, and cropping." 2 Dane Ab. 569, 570.

The same view has been forcibly expressed by Chief Justice Shaw. Speaking of imprisonment in the State prison, which by the statutes of Massachusetts was required to be at hard labor, he said: "Whether we consider the words 'infamous punishment' in their popular meaning, or as they are understood by the Constitution and laws, a sentence to the State prison, for any term of time, must be considered as falling within them. The convict is placed in a public place of punishment, common to the whole State, subject to solitary imprisonment, to have his hair cropped, to be clothed in conspicuous prison dress, subjected to hard labor without pay, to hard fare, coarse and meagre food, and to severe discipline. Some of these a convict in the house of correction is subject to; but the house of correction, under that and the various names of workhouse and bridewell, has not the same character of infamy attached to it. Besides, the State prison, for any term of time, is now by law substituted for all the ignominious punishments formerly in use; and, unless this is infamous,

then there is now no infamous punishment other than capital."
*Jones* v. *Robbins*, 8 Gray, 329, 349. In the same case, Mr.
Justice Merrick, while dissenting from the rest of the court
upon the question whether under the words "the law of the
land" in the Constitution of Massachusetts an indictment by
a grand jury was essential to a prosecution for a crime punish-
able by imprisonment in the State prison, and taking a posi-
tion upon that question more accordant with the recent judg-
ment of this court in *Hurtado* v. *California*, 110 U. S. 516,
yet concurred with the other judges in holding that such im-
prisonment at hard labor was an infamous punishment. 8 Gray,
370–372.

Imprisonment at hard labor, compulsory and unpaid, is, in
the strongest sense of the words, "involuntary servitude for
crime," spoken of, in the provision of the Ordinance of 1787,
and of the Thirteenth Amendment of the Constitution, by
which all other slavery was abolished.

Deciding nothing beyond what is required by the facts of
the case before us, our judgment is that a crime punishable by
imprisonment for a term of years at hard labor is an infamous
crime, within the meaning of the Fifth Amendment of the
Constitution ; and that the District Court, in holding the peti-
tioner to answer for such a crime, and sentencing him to such
imprisonment, without indictment or presentment by a grand
jury, exceeded its jurisdiction, and he is therefore entitled to
be discharged.

*Writ of habeas corpus to issue.*

A similar decision was made April 13, 1885, in UNITED STATES
*v.* PETIT, submitted by *Mr. Solicitor-General* without argument
April 7, 1885, on a certificate of division from the Circuit Court
of the United States for the Eastern District of Missouri.

This was an information on Rev. Stat. § 5457, for the offence
of passing a counterfeit half dollar, punishable by fine of not
more than $5,000 and imprisonment at hard labor not more than
ten years. The Circuit Judge and the District Judge certified
that upon the determination of a plea to the jurisdiction they
were opposed in opinion, "the question being whether the United

States could proceed by information instead of indictment to try a defendant charged under section 5457 of the Revised Statutes with the violation thereof; that is to say, whether the offences declared in said section are infamous crimes to be prosecuted solely through indictment pursuant to Article V of the amendments to the Constitution of the United States." 11 Fed. Rep. 58.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The first question certified in this case is answered in the negative, and the second in the affirmative, on the authority of *Ex parte Wilson*, decided at the present term.