Commonwealth ex rel., Appellant, *v.* Heiman.

Argued October 29, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Anne X. Alpern,* First Assistant City Solicitor, with her *Thomas M. Benner,* City Solicitor, for appellant.

*Samuel G. Wagner,* with him *Ernest G. Nassar* and *Louis H. Artuso,* for appellee.

OPINION BY JAMES, J., April 20, 1937:

On April 6, 1936, the council of the City of Pittsburgh adopted an ordinance providing for the arrest and punishment of any person or persons "who shall engage in soliciting, offering, exchanging, transmitting any slips, memoranda or communication in connection with the gambling scheme known as 'Playing the numbers', within the City of Pittsburgh, to the profit or gain of any number player or other person in any wise a party to or connected with the playing of numbers." Under this ordinance, David Heiman, alias Dave Simon, was convicted before a magistrate of having taken part in "writing numbers." On appeal to the county court, where the case was tried de novo, he was again convicted and sentenced, whereupon he filed a motion for judgment on the whole record and in arrest of judgment, which motion was sustained. From this judgment, the city has appealed.

Appellant bases its authority to adopt the ordinance upon the Act of March 7, 1901, P. L. 20—known as the Charter Act of the City of Pittsburgh—which provides under article XIX, section 3: "XXV. To restrain, prohibit and suppress tippling shops, houses of prostitution, gambling-houses, gaming-cock or dog fighting, and other disorderly or unlawful establishments or practices, desecration of the Sabbath day, commonly called Sunday, and all kinds of public indecencies. ...... XLIII. To make all such ordinances, by-laws, rules and regulations, not inconsistent with the Constitution and laws of this Commonwealth, as may be expedient or necessary, in addition to the special powers in this section granted, for the proper management, care and control of the city and its finances, and the maintenance of the peace, good government and welfare of the city ......; and to enforce all ordinances by inflicting penalties."

In the opinion of the court below, the ordinance is invalid because under the terms of the charter act, it does not appear that it was the legislative intent to allow the City of Pittsburgh to prohibit, by ordinance, those crimes which are an offense against the people of the state at large. There is much force in this reasoning, as the charter act specifically provides that its ordinances shall not be inconsistent with the Constitution and laws of this Commonwealth. However, the majority members of this court are convinced that the ordinance was in violation of appellee's constitutional right of trial by jury.

The acts, with which appellee was charged, have been declared to constitute the offense of lottery punishable under sections 53 and 54 of the Criminal Code of 1860 (P. L. 382): *Com. v. Banks,* 98 Pa. Superior Ct. 432. Lotteries have been the subject of legislation both in England and in this state from the earliest days. "By several statutes of the reign of King George II., all

private lotteries by tickets, cards, or dice ...... are prohibited under a penalty of 200 £ for him that shall erect such lotteries and 50 £ a time for the players. Public lotteries, unless by authority of parliament, and all manner of ingenious devices under the denomination of sales or otherwise, which in the end are equivalent to lotteries, were before prohibited by a great variety of statutes under heavy pecuniary penalties": Blackstone's Comm., Vol. 4, p. 173. The Act of February 14, 1729-30, 1 Sm. L. 179, provided that any person who shall set up, exercise or keep any lottery or lotteries within the province of Pennsylvania, and be thereof legally convicted, shall forfeit one hundred pounds; under the Act of February 17, 1762, 1 Sm. L. 246, §2, any person who shall set up any lottery, play or device, and shall be thereof legally convicted in any court of quarter sessions, or in the Supreme Court, shall forfeit and pay the sum of five hundred pounds, and by section 3, any person who shall buy, sell or expose to sale any ticket or tickets whatsoever in such lotteries, and be legally convicted thereof, in either of the courts aforesaid, shall forfeit the sum of twenty pounds; Act of January 20, 1792, 3 Sm. L. 60, fixing five pounds as a penalty, was in substance a reenactment of the third section of the Act of 1762, supra, and was intended, as set forth in the preamble, to extend to lotteries set up and established without this state; Act of March 2, 1805, 4 Sm. L. 210, recognized that a lottery may be allowed by the laws of this Commonwealth and for certain practices, in relation to the sale of the tickets, a penalty was provided. By the Act of March 1, 1833, P. L. 60, lotteries were entirely abolished and declared to be unauthorized and unlawful, and any person who shall sell or expose to sale any lottery ticket or tickets, and who shall be convicted thereof, in any court of competent jurisdiction, for each and every offense, shall forfeit and pay a sum not less than

$100 and not exceeding $10,000, or be sentenced to undergo imprisonment not exceeding six months, at the discretion of the court. The Act of March 16, 1847, P. L. 476, provided that any person who shall sell any lottery ticket, upon conviction before any court of competent jurisdiction, shall, for each offense, be sentenced to pay a fine not exceeding $5,000 and to undergo imprisonment for a period not exceeding three years. The Act of March 31, 1860, P. L. 382, §§52, 53, 54, again relates to the subject of lotteries, and by section 53 it is provided that if any person shall erect any such lottery, as provided in section 52, or be in any way concerned in the management, conducting or carrying on the same, he shall be guilty of a misdemeanor, and, on conviction, be sentenced to pay a fine not exceeding $1,000 and imprisonment not exceeding one year; and section 54 provides that any person who shall sell or expose to sale any lottery ticket shall be guilty of a misdemeanor, and on conviction, be sentenced to pay a fine not exceeding $1,000 and imprisonment not exceeding two years. This section further provides that any indictment under this act shall be deemed and adjudged good and sufficient which describes the offence in the words of this law. In the Report of Commissioners on Revised Penal Code (1860) page 21, it was stated that sections 53 and 54 were consolidations and amendments of the previous acts above recited. Thus it appears that from the earliest days of this Commonwealth down to the adoption of the Constitution of 1874, lottery was an offense triable by a jury.

Section 6 of the Declaration of Rights of the state Constitution of 1874 provides: "Trial by jury shall be as heretofore, and the right thereof remain inviolate." This section is identical with article IX, section 6 of the Constitution of 1790 and 1838, while the Constitution of 1776, section 25, provides: "Trials shall be by jury as heretofore."

"When the convention declare in the 5th section of the bill of rights, that 'trials by jury ,shall be *as heretofore,* and the right thereof shall remain inviolate,' I do not conceive that any restriction is thereby laid on the legislative authority, as to erecting or organizing new judicial tribunals in such manner as may be most conducive to the general weal, on a change of circumstances effected by a variety of causes. ...... But it is equally obvious to my understanding, that the legislature cannot constitutionally impose any provisions substantially restrictive of the right of trial by jury. They may give existence to new *forums*; they may modify the powers and jurisdiction of former courts, in such instances as are not interdicted by the constitution from which their legitimate powers are derived. Still, the sacred inherent right of every citizen, a trial by jury, must be preserved. *'It shall remain inviolate,* as heretofore.' " *Emerick v. Harris,* 1 Binn. 416, 423.

"It is also argued that the Constitution of Pennsylvania is violated in that part of it, which provides that 'trial by jury shall be *as heretofore,* and the right thereof *remain* inviolate.' But the trial by jury *is* as it was at the formation of the Constitution, and the right as it then existed, *does* remain inviolate. Every class of cases triable by jury in 1790, are still triable in no other way, at least this statute has not diminished their number. There is nothing to forbid the legislature from creating a new offence and prescribing what mode they please of ascertaining the guilt of those who are charged with it": *Van Swartow v. Com.,* 24 Pa. 131, 133; *Com. v. Waldman,* 140 Pa. 89, 21 A. 248; *Com. v. Mecca Cooperative Co.,* 60 Pa. Superior Ct. 314; *Allen v. Com.,* 77 Pa. Superior Ct. 244.

"Our first constitution, that of 1776, declared that 'trials by jury shall be *as heretofore.'* The Constitution of 1790, and the amended one of 1838, adopted

substantially the same provision. Their language was, 'trial by jury shall be *as heretofore,* and the right thereof remain inviolate.' All looked to preservation, not extension. It is the old right, whatever it was, the one previously enjoyed, that must remain inviolable, alike in its mode of enjoyment and in its extent. What, then, was this right thus cherished and thus perpetuated?": *Byers and Davis v. Com.,* 42 Pa. 89, 94; *Haines v. Levin,* 51 Pa. 412. The guarantee of trial by jury does not extend to all offenses, but is restricted to such offenses as had been established prior to the adoption of the Constitution. Summary convictions were well known before the formation of the Constitution, and they are not expressly or impliedly prohibited by that instrument except insofar as they are not to be substituted for a jury, where the latter mode of trial had been previously established: *Van Swartow v. Com.,* supra. "Such guarantee is, that the right shall remain as heretofore; that is, as it was when the Constitution was adopted. This does not prevent the legislature from providing other tribunals for the adjustment of rights and liabilities subsequently created": *Premier C. & B. Co., v. Pa. Alcohol P. B.,* 292 Pa. 127, 140 A. 858; *Schwab v. Miller,* 302 Pa. 507, 153 A. 731.

The "right of trial by jury" has been the subject of judicial determination in a vast number of cases, the most recent of which is *District of Columbia v. Ethel Clawans,* 299 U. S. 524. A comprehensive collection of the statutes, English and American, will be found in Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury, 39 Harv. L. Rev. 917, 922-965, 983-1019.

In *Mountain v. Com.,* 68 Pa. Superior Ct. 100, where the defendant, a school teacher, charged with unnecessary cruel punishment upon a pupil, was summarily convicted under the Act of June 11, 1879, P. L. 142, this court said: "The position taken by the appellant

is that the act charged was a misdemeanor at common law and under the Crimes Act of 1860 that it was an assault and battery, and triable only in the Court of Quarter Sessions before a jury of twelve. If the statute was intended to cover the case of a teacher who unreasonably punished a pupil, it merely reenacted the prohibition against assault and battery, for the law is that a teacher who unreasonably punishes a pupil is guilty of that offense. In so far as it is legislation relating to assault and battery it prescribes a new form of trial without a jury for an offense which is not only a misdemeanor at common law and under the Act of 1860, but is expressly declared to be a misdemeanor in the Act of 1879. The Declaration of Rights provides that trial by jury shall be as heretofore, and the right thereof remain inviolate. The act of which the appellant was accused was indictable and triable in the Court of Quarter Sessions at the time of the founding of the Commonwealth and under all of our Constitutions. The change of the name of the offense does not affect the constitutional right of the accused to a trial by jury. There can be no doubt that prior to the adoption of the Act of 1879 the defendant could have been indicted for assault and battery from the facts alleged in the complaint against her, and on such a charge she would have been entitled to a trial by a jury of twelve men. This right could not be taken away by a statute vesting jurisdiction in a justice of the peace to try and sentence persons so accused. ...... We think it clear that so much of the statute as may be applicable to the case of a teacher who unreasonably punishes a pupil is a reenactment of existing law, which from the foundation of the Commonwealth has declared the offense to be a misdemeanor triable before a jury of twelve"

In *Mansfield's Case,* 22 Pa. Superior Ct. 224, where the constitutionality of the Juvenile Court Act of May 21, 1901, P. L. 279 was in question, Judge W. D. PORTER

said: "Larceny is a common-law offense; in Pennsylvania it has been indictable and triable by jury since the birth of the commonwealth. This defendant is in prison, adjudged guilty of larceny, but he has never been either indicted or tried by a jury; he was proceeded against criminally by information. This involved a violation of the rights which are by article 1 of the constitution of Pennsylvania excepted out of the general powers of government; section 10 declares that 'no person shall, for any indictable offense, be proceeded against criminally by information;' section 9, the accused shall have 'in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage;' and section 6. 'Trial by jury shall be as heretofore and the right thereof remain inviolate.' We do not say that the legislature might not enact a law which would make it possible for one accused to waive, by some positive affirmative action, these constitutional rights, but in criminal proceedings there can be no waiver by mere implication. While the offense remains indictable and persons who are sui juris are, without any action on their part, secure in the right of a jury trial, an act of assembly which requires that a boy fourteen years of age shall make a formal affirmative demand in order to secure a jury trial when charged with such an offense is such a clog upon the right as to involve a violation of the constitutional guaranty [citing many authorities]."

The language of these last two cases is particularly applicable to the question here involved, as the acts, which appellee was accused of, were indictable and triable in the court of quarter sessions at the time of the founding of the Commonwealth, and under all of our Constitutions. We see no such distinction between the offense of assault and battery, which is in its nature a personal wrong, the offence of larceny, a wrong against property, and that of lottery, which

is prohibited because of its demoralizing effect upon public morality, so as to include one within the guarantee of the Constitution and exclude the others. If the legislature had no right to change the mode of trial for the offense with which appellee was charged, it necessarily follows that it could not give its agent, the City of Pittsburgh, the right to do that which it could not do itself. In arriving at this conclusion, we see no conflict here with the views expressed in *Van Swartow v. Com.*, supra, as the Act of April 14, 1851, P. L. 548, providing for a summary conviction for the sale of liquors on the Sabbath, related to a new offense created subsequent to the Constitution of 1838; nor with *Byers and Davis v. Com.*, supra, which upheld the Act of March 13, 1862, P. L. 115—providing for the summary conviction of a professional thief, burglar or pickpocket frequenting certain public places, for an unlawful purpose—for the reason that vagrants, including rogues and vagabonds, and those who frequent public places for unlawful purposes, were so liable before the Constitution was adopted. In *Scranton City v. Tatarunas*, 36 Pa. Superior Ct. 205, a summary conviction for conducting a game played for money, in violation of a city ordinance, was sustained by a divided court.

It has been urged that lotteries are an evil which can be more expeditiously eradicated by summary convictions in magistrates' courts than by the more cumbersome method of indictment and trial by jury. This may be true, but expediency cannot justify the denial of a right guaranteed by the Constitution.

Judgment affirmed.