Commonwealth *v.* Cano, Appellant.

Submitted June 4, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD and JONES, JJ.

*John E. Lavelle,* with him *John J. Curran, Alvin E. Maurer, Jr.* and *Curran & Lavelle,* for appellants..

*Thomas D. McBride,* Attorney General, with him *Leon Ehrlich,* Deputy Attorney General, *Donald D. Dolbin* and *Thomas B. Noonan,* Special Attorneys, for appellee.

Opinion per Curiam, June 28, 1957:

Aurelio Cano and Charles Martin, defendants, were convicted by a jury and sentenced in the Court of Quarter Sessions of Schuylkill County for violation of the Anthracite Mine Law, Act of June 2, 1891, P. L. 176, as amended, 52 PS §71 et seq. The defendants were arrested on a warrant issued by President Judge Palmer of Schuylkill County on August 1, 1952, as a result of an affidavit filed by an anthracite mine inspector pursuant to Article XVII, §1 of the statute, 52 PS §511, charging them with being negligently guilty of thirteen violations of the statute. There was no presentment to or indictment by the grand jury as the procedure in the statute provided otherwise. The prosecution arose out of an occurrence in defendants' mine on March 27, 1952, in which five miners lost their lives when the mine was flooded from adjacent workings. Defendants were not charged in these proceedings with any crime directly related to the deaths.

Following the dismissal of the defendants' motion to dismiss the proceeding as unconstitutional, a jury trial was demanded under the provisions of the statute, Article XVII, §1, 52 PS §511, supra. At the trial a demurrer was sustained as to the corporate defendant, Cano & Martin, Inc. The ninth count in the information was dismissed at the request of the Commonwealth. The twelve remaining counts or charges against defendants were submitted to the jury and resulted in their acquittal on seven counts and conviction on five counts. Motions in arrest of judgment and for a new trial were filed. The court en banc refused the motion for a new trial as to all counts in the information, but granted the motion in arrest of judgment on the first count. On each of the four counts remaining (second, seventh, tenth and twelfth) defendants were sentenced to the maximum penalty of a $500 fine and

three months in the county prison, 52 PS §511, or a total fine of $2,000 and one year in the county prison. Defendants appealed to the Superior Court which unanimously upheld the convictions and affirmed the judgments and sentences: *Commonwealth v. Cano,* 182 Pa. Superior Ct. 524, 128 A. 2d 358. We allowed an appeal to this Court, limited, however, to the constitutional question raised by defendants under Article I, Section 10 of the Pennsylvania Constitution.

After due consideration we are in accord with the determination of the question by the Superior Court, and find nothing that can be profitably added to the learned and able discussion of the matter by President Judge RHODES. The determination of the Superior Court is affirmed on the following portion of his opinion:

"Defendants contend that the procedure which was followed—the filing of an affidavit charging them with violations of the Anthracite Mine Law, and the issuance of a warrant by the judge of the Court of Quarter Sessions of Schuylkill County, in accordance with Article XVII, §1, of the Law, 52 PS §511—violates Article I, §10 of the Constitution of this Commonwealth, PS Const. Art. I, §10, which provides: 'No person shall, for any indictable offense, be proceeded against criminally by information, . . .' It is contended that the absence of a bill of indictment by the grand jury renders the statutory procedure invalid. The procedure by information in the sense that it is used in the Pennsylvania Constitution refers exclusively to practices formerly used in England whereby, upon information in the King's Court by some person, the accused was put on trial without further inquiry or investigation. Com. ex rel. Stanton v. Francies, 250 Pa. 496, 500, 501, 95 A. 527; Com. ex rel. Wheeler v. Francies, 58 Pa. Superior Ct. 266, 267; Com. ex rel. Scasserra v. Maroney,

179 Pa. Superior Ct. 150, 153, 115 A. 2d 912. The absence of an intervening indictment by the grand jury would render this procedure unconstitutional if the offenses for which these defendants were tried are 'indictable offenses' within the meaning of the Constitution. Com. v. Wadley, 169 Pa. Superior Ct. 490, 493, 83 A. 2d 417. The legislature cannot abolish the grand jury or remove this method of criminal procedure for 'indictable offenses.' Com. v. Liebowitz, 143 Pa. Superior Ct. 75, 80, 17 A. 2d 719; Dauphin County Grand Jury Investigation Proceedings (No. 2), 332 Pa. 342, 353, 354, 357, 2 A. 2d 802. See, also, Hartranft's Appeal, 85 Pa. 433, 453, where, in a dissenting opinion, Chief Justice AGNEW stated that the grand jury is 'one of the boasted bulwarks of English liberty handed down to us, and protected by the Declaration of Rights.'

"At common law the method of proceeding by information was not offensive generally, and an indictment by a grand jury was required only in cases involving capital crimes and felonies. 'By the law of England, informations by the Attorney-General, without the intervention of a grand jury, were not allowed for capital crimes, nor for any felony, by which was understood any offense which at common law occasioned a total forfeiture of the offender's lands, or goods, or both. 4 Bl. Com. 94, 95, 310. The question whether the prosecution must be by indictment, or might be by information, thus depended upon the consequences to the convict himself.' Ex parte Wilson, 114 U. S. 417, 423, 5 S. Ct. 935, 29 L. Ed. 89, 91. See 42 C. J. S., Indictments and Informations, §9, p. 837. It seems that, when this common law safeguard was recognized in the United States, it apparently assumed a greater area of protection. See 42 C. J. S., Indictments and Informations, §9 (b), p. 838. The Pennsylvania Constitution and the constitutions of a number

of states provide that proceedings by information are prohibited when the offense is an 'indictable' offense. The Fifth Amendment to the Constitution of the United States provides: 'No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, . . .' Although the language used in the Constitution of the United States and in the constitutions of various states, including Pennsylvania, could be interpreted as limiting their application to capital crimes and felonies as at common law they have not been so restricted. These provisions have been given a more extensive application, and the test generally applied in determining whether an indictment is necessary relates to the extent of the punishment which may be imposed. It has been held in Kentucky, under a constitutional provision virtually the same as in Pennsylvania, that the term 'indictable offense' refers to common law and statutory offenses, the punishments for which are 'infamous,' such as death or imprisonment in a penitentiary as distinguished from imprisonment in a county jail. Perry v. Bingham, 265 Ky. 133, 95 S. W. 2d 1099, 1100, 1101; Lakes v. Goodloe, 195 Ky. 240, 242 S. W. 632, 639, 640. This is similar to the test under the Federal Constitution which is whether the accused is made subject to punishment by imprisonment in a penitentiary or at hard labor. See Brede v. Powers, 263 U. S. 4, 44 S. Ct. 8, 68 L. Ed. 132; Mackin v. United States, 117 U. S. 348, 350, 351, 6 S. Ct. 777, 29 L. Ed. 909, 910, 911; Ex parte Wilson, supra, 114 U. S. 417, 423, 5 S. Ct. 935, 29 L. Ed. 89, 91. A statutory crime which is punishable by imprisonment at hard labor or by a fine is considered infamous because imprisonment may be imposed. United States vs. Moreland, 258 U. S. 433, 42 S. Ct. 368, 66 L. Ed. 700. It will be observed that the controlling consideration under the federal rule is imprisonment in a penitentiary or at hard labor.

"Our decisions indicate that the provision of Article I, §10, of the Pennsylvania Constitution was not intended to be limited to capital offenses and felonies, but that it applies also to the more serious indictable common law misdemeanors and statutory misdemeanors which the Legislature intends should be indictable. Mansfield's Case, 22 Pa. Superior Ct. 224, 234; Mountain v. Com., 68 Pa. Superior Ct. 100, 102; Allen v. Com., 77 Pa. Superior Ct. 244, 246, 247; Com. ex rel. City of Pittsburgh v. Heiman, 127 Pa. Superior Ct. 1, 9, 10, 190 A. 479; Com. ex rel. Marsh v. Lindsey, 130 Pa. Superior Ct. 448, 450, 451, 198 A. 512.

"Defendants argue that the offenses charged under the Anthracite Mine Law were offenses which could have been punished at common law under the rule of Com. v. McHale, 97 Pa. 397, 408. In the latter case the Supreme Court said that the test for determining which offenses are indictable in Pennsylvania as common law offenses is not whether the precise definition of the crime can be found in the English texts or reported cases, but rather whether the offenses presently charged might have been punished at common law. It is there stated (page 408 of 97 Pa.) : 'What is a common law offense? The highest authority upon this point is Blackstone. In chap. 13 of vol. 4, of Sharswood's edition, it is thus defined. "The last species of offenses which especially affect the Commonwealth are those against the public [peace] or economy. By the public [peace] and economy I mean the due regulation and domestic order of the kingdom, whereby the individuals of the state, like members of a well-governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood and good manners, and to be decent, industrious and inoffensive in their respective stations. This head of offences must therefore be very miscellaneous, as it *com-*

*prises all such crimes as especially affect public society,* and are not comprehended under any of the four preceding series. These amount some of them to felony, and others to misdemeanors only".' The Supreme Court then held that the making of false and fraudulent entries in a book of voters, the depositing of false and fraudulent ballots, and the false and fraudulent counting of ballots at an election were indictable as common law offenses under this rule. There have been other instances in which conduct was indictable as a common law offense in the absence of specific common law precedent or statutory declaration. In the McHale and subsequent cases, the inquiry whether the conduct amounted to a common law offense under this miscellaneous category was for the purpose of determining whether the Commonwealth was empowered to prosecute the accused for such conduct. See The Penal Code, June 24, 1939, P. L. 872, §1101, 18 PS §5101. Here the inquiry is whether a statutory offense is 'indictable' within the meaning of the constitutional provision. An offense may come within the McHale rule of common law offenses and still not be indictable, as not all offenses were indictable at common law. Ex parte Wilson, supra, 114 U. S. 417, 423, 5 S. Ct. 935, 29 L. Ed. 89, 91. Summary proceedings were also recognized at common law; and, while some petty offenses might conceivably fall within the broad miscellaneous category of the McHale rule, they may nevertheless be properly prosecuted without an indictment. See Com. ex rel. City of Pittsburgh v. Heiman, supra, 127 Pa. Superior Ct. 1, 7, 10, 190 A. 479. If there is no specific common law or statutory procedure established for an offense which comes within the McHale rule, the Commonwealth is permitted to proceed in the usual manner, that is, by indictment. It is one thing to say that an indictment may lie in the absence of a specific common

law or statutory procedure and another thing to say that the Constitution requires such an indictment. See 42 C. J. S., Indictments and Informations, §§8, 9, p. 837; 1 Wharton's Criminal Law, 12th Ed., §30, p. 47; Com. ex rel. Barr v. Naylor, 34 Pa. 86, 89.

"Moreover, we do not agree with defendants' contention that the charges against them, in the absence of the statute, would have been indictable as common law offenses. Defendants were charged and tried under Article XVII, §1 of the Law, 52 PS §511, for having been 'negligently guilty of an offense against the provisions of this act, whereby a dangerous accident had resulted or might have resulted to any person or persons employed in such mine . . .' The four alleged violations, of which they were convicted and for which they were sentenced, relate to the following: (1) Failure to take the precautions prescribed by Rule 15 of Article XII of the Law, as amended, 52 PS §286, when approaching inaccessible workings which were likely to contain water or gas (second count); (2) failure to provide an efficient brake on every drum for lowering or raising persons or materials in the mine, as required by Article IV, §14 of the Law, 52 PS §356 (seventh count); (3) failure to send reports of air measurements in the mine to the mine inspector, as required by Article X, §16 of the Law, 52 PS §564 (tenth count); and (4) improper and unsafe storage of explosives used in the mine contrary to Rule 26 of Article XII of the Law, 52 PS §421 (twelfth count). We think it is obvious that these offenses are not within the McHale definition of common law offenses. Except as such conduct has been prohibited by this statute, they do not offend against the public peace, morals, or economy, or the due regulation and domestic order of the Commonwealth. Although the Legislature, under the valid exercise of its police power, did regulate the business of

mining by this statute for the safety of miners, it is only by virtue of the statute that the failure to act in accordance therewith is made a punishable offense. The conduct of defendants was not necessarily offensive in itself, and in our judgment it would not have been so at common law. The conduct regulated by the statute is not similar to that in the McHale or subsequent cases. In Com. v. McHale, supra, 97 Pa. 397, there was fraud, in Com. v. Mochan, 177 Pa. Superior Ct. 454, 110 A. 2d 788, and Com. v. DeGrange, 97 Pa. Superior Ct. 181, there were lewd, immoral, and indecent acts, and in Com. v. Flaherty, 25 Pa. Superior Ct. 490, there was an attempt to commit larceny which is a crime. If the contention of defendants is correct and the McHale rule is given such a broad interpretation, it would follow that nearly every newly created statutory offense would have to be considered a common law offense. As we view it this is not the scope of the McHale rule. It is applicable only to such conduct which is inherently offensive to the public peace, morals, and economy, and not to that which is within the power of the Legislature to prescribe as new crimes. See I Wharton's Criminal Law, 12th Ed., §28, p. 43; 22 C. J. S., Criminal Law, §8, p. 58. The Legislature has the power to prescribe new offenses and provide penalties therefor, and it may set forth the procedure by which a person charged with the commission thereof may be tried and his guilt or innocence determined. It may do this without the new statutory offense necessarily taking on the attributes of a common law offense and becoming thereby indictable within the meaning of the constitutional provision. Van Swartow v. Com., 24 Pa. 131, 133, 134; Allen v. Com., 77 Pa. Superior Ct. 244, 247. Cf. Com. ex rel. City of Pittsburgh v. Heiman, supra, 127 Pa. Superior Ct. 1, 6-10, 190 A. 479. As we have said, summary proceedings were rec-

ognized at common law, and the Legislature may provide this means of prosecution when it considers the offense created of a petty nature or of lesser gravity than an indictable offense. See Duke v. United States, 301 U. S. 492, 495, 57 S. Ct. 835, 81 L. Ed. 1243, 1245. The error in defendants' contention is not only in giving a broad interpretation to the McHale rule and making it applicable to almost every newly created offense which may be connected in some way with the public peace, morals, or economy, but also in extending the rule so that every offense which may be said to fit that broad definition is of necessity an indictable offense.

"The fact that the Legislature declared the violations with which defendants are charged to be misdemeanors (52 PS §514) does not make them indictable offenses. The Legislature indicated its intention in this respect by providing a special procedure for prosecution of these offenses. It is true that the general and customary meaning of the word misdemeanor is an indictable offense not amounting to a felony (Com. ex rel. Marsh v. Lindsey, supra, 130 Pa. Superior Ct. 448, 450, 198 A. 512), but the use of the term misdemeanor may also include offenses not punishable by indictment. 'But if it be true that the word [misdemeanor] includes all indictable offenses below the grade of felony, it does not follow it may not with propriety be used by the legislature to designate a class of petty offenses not known to the common law, and not necessarily indictable.' Allen v. Com., supra, 77 Pa. Superior Ct. 244, 248. See, also, Com. v. Mecca Cooperative Co., 60 Pa. Superior Ct. 314, 317, where a summary offense was likewise designated by the Legislature as a misdemeanor. The Legislature here, as in the Allen and Mecca cases, although designating the offenses involved misdemeanors, clearly indicated that they were not of sufficient severity to be indictable; the punishment is by

fine or simple imprisonment in the county prison for three months or both. In other sections of the Law (i.e., Article I, §1, as amended, 52 PS §71), the Legislature provided summary conviction as the method of enforcement, although the summary offenses are included in the declaration that all offenses under the Law are misdemeanors (52 PS §514). With respect to violations punishable under Article XVII, §1, 52 PS §511, presently before us, the Legislature indicated that, when the violation involved negligence and was likely to cause a dangerous accident, the punishment should be greater and the prosecution should be conducted in conformity therewith. It thus provided for a trial in the court of quarter sessions and before a jury if the defendants so desire. These statutory offenses were within the power of the Legislature to create. They were not crimes at common law. They are more serious than summary offenses, although they are not of the magnitude of indictable misdemeanors. See Duke v. United States, supra, 301 U. S. 492, 495, 57 S. Ct. 835, 81 L. Ed. 1243, 1245; United States v. Sloan, 31 F. Supp. 327; United States v. Lomas, 60 F. Supp. 198; Falconi v. United States, 6 Cir., 280 F. 766; Kempe v. United States, 8 Cir., 151 F. 2d 680."

The judgments of the Superior Court affirming the judgments and sentences of the Quarter Sessions of Schuylkill County, are affirmed.