BAKER, Judge
(concurring in the result):
Dr. Galloway and Dr. Kirubakaran assessed Appellant’s mental condition while Appellant was an inmate at the Disciplinary *389 Barracks, Fort Leavenworth, Kansas. As recounted in the majority opinion, neither doctor assessed Appellant as suffering from a severe mental disease or defect. As a result, neither doctor treated Appellant for such a disease or defect. Dr. Galloway indicated in her assessment a suspicion that Appellant was malingering and that abnormalities in his behavior should be treated in the framework of custodial discipline and not as medical problems. However, there came a time when Appellant’s behavior required medical treatment, and he was subsequently diagnosed with acute schizophrenia. Appellant was eventually referred to a board convened pursuant to Rule for Courts-Martial (R.C.M.) 706 by order of this Court. United States v. Best, 54 M.J. 367 (C.A.A.F.2000). The board concluded that Appellant was not suffering from a severe mental disease or defect at the time of his original offense. Dr. Galloway and Dr. Kirubakaran served as two of the three members of Appellant’s R.C.M. 706 board.
The question on appeal is whether Dr. Galloway or Dr. Kirubakaran had a conflict of interest that should have disqualified them from serving on Appellant’s R.C.M. 706 board. Put into factual context, in light of their prior assessments, which did not identify the severity of Appellant’s condition, were they capable of impartially serving on Appellant’s board without in some manner trying to validate or justify their prior judgments regarding Appellant?
Like this Court, the Court of Criminal Appeals found this to be a question of first impression. The lower court analogized to both the American Psychological Association’s Code of Conduct (applicable to psychologists) and the American Medical Association’s Principles of Medical Ethics (applicable to psychiatrists), as well as the conflict of interest standard for legal counsel articulated by the Supreme Court in Mickens v. Taylor, 535 U.S. 162, 172 n. 5, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), to develop its standard for psychotherapist conflict of interest review. The Court of Criminal Appeals “conclude[d] that an actual conflict of interest exists if a psychotherapist’s prior participation materially limits his or her ability to objectively participate in and evaluate the subject of an R.C.M. 706 sanity board.” United States v. Best, 59 M.J. 886, 892 (A.Ct.Crim.App.2004). However, the lower court, this Court, and the parties have struggled to place this issue in broader legal context. The majority, for example, concludes that the process associated with R.C.M. 706 boards is entirely a function of administrative law and executive discretion, and fails to place the issue presented into constitutional context.
While I agree with the majority’s conclusion that Dr. Galloway and Dr. Kirubakaran did not bear a disqualifying conflict in this ease, I believe the question presented finds its root in constitutional due process. The Fifth and Fourteenth Amendments of the U.S. Constitution restrain government from depriving any person of life, liberty, or property without due process of law, and “protect ] the individual against the arbitrary action of government.” Kentucky Dep’t of Corrections v. Thompson, 490 U.S. 454, 459-60, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); Ex parte Wilson, 114 U.S. 417, 426, 5 S.Ct. 935, 29 L.Ed. 89 (1885) (“The purpose of the [Fifth] Amendment was to limit the powers of the legislature, as well as of the prosecuting officers, of the United States.”). A protected liberty interest may arise from either the text of the Due Process Clause itself, or as a result of a statute or regulation that places substantive limitations on official discretion. See Thompson, 490 U.S. at 462, 109 S.Ct. 1904; Vitek v. Jones, 445 U.S. 480, 488, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); see also Ford v. Wainwright, 477 U.S. 399, 428, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (O’Con-nor, J., concurring in part and dissenting in part) (“Our cases leave no doubt that where a statute indicates with ‘language of an unmistakable mandatory character,’ that state conduct injurious to an individual will not occur ‘absent specified substantive predicates,’ the statute creates an expectation protected by the Due Process Clause.”) (quoting Hewitt v. Helms, 459 U.S. 460, 471-72, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)).
Under R.C.M. 706, once a mental examination is ordered, the matter shall be submitted to a sanity board charged to report on *390 the mental responsibility or capacity of the accused. The rule includes specific, discretion-narrowing directives for both the order authorizing the board and for the conduct of the board itself. R.C.M. 706(c). While Appellant may have had no independent constitutional right to an R.C.M. 706 board, once such a board was ordered, its evaluation must have been conducted in a manner consistent with the requirements of procedural due process. See Wainwright, 477 U.S. at 428-29, 106 S.Ct. 2595; see also Diaz v. Judge Advocate General of the Navy, 59 M.J. 34, 38 (C.A.A.F.2003) (where statute has created appellate process as integral part of criminal justice system, procedures used in deciding appeal must comport with demands of due process and equal protection).
Such due process includes the right to a fair and impartial adjudicator. Concrete Pipe & Prods. v. Constr. Laborers Pension Trust, 508 U.S. 602, 617, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993) (“That officers acting in a judicial or quasi-judicial capacity are disqualified by their interest in the controversy to be decided is, of course, the general rule.”) (quoting Tumey v. Ohio, 273 U.S. 510, 522, 47 S.Ct. 437, 71 L.Ed. 749 (1927)). Cf. United States v. Dowty, 60 M.J. 163, 169 (C.A.A.F.2004) (“This right [to an impartial jury] ‘is the cornerstone of the military justice system.’ ”) (quoting United States v. Hilow, 32 M.J. 439, 442 (C.M.A.1991)); Article 37, Uniform Code of Military Justice, 10 U.S.C. § 837 (statute prohibiting any attempt to improperly influence the determinations of a court martial or reviewing authority). In the context presented at bar, the Court of Criminal Appeals adopted by analogy the conflict standards for psychotherapeutic professionals and for legal counsel to determine if the members of Appellant’s R.C.M. 706 board were indeed impartial. While I defer on whether this is the correct standard to apply in all R.C.M. 706 conflict of interest contexts (i.e., for both psychologists and psychiatrists), I am satisfied that this standard appropriately tested whether Dr. Galloway and Dr. Kirubakaran were “impartial.”
I believe the facts as applied against this standard indicate that both were capable of impartial judgment. Among other things, Dr. Galloway acknowledged under direct examination and cross-examination that she was incorrect in her initial assessment of Appellant. Further, she demonstrated a willingness to reassess her judgment and to do so without apparent defensiveness or protection of her prior judgment. As judges are asked on occasion to reconsider their judgments on appeal, based on perceived errors in law or fact, See, e.g., C.A.A.F. R. 31, I do not believe doctors as professionals are inherently incapable of doing the same absent a showing of actual conflict. In the context of the liberty interest associated with this particular R.C.M. 706 board, there was added protection in that the integrity and impartiality of the doctors’ evaluation was subject to the crucible of cross-examination.
This would appear to leave Appellant in the position of arguing for a per se disqualification where an assessing psychotherapist subsequently serves on a R.C.M. 706 board. However, such a position is not required as a matter of statutory law or constitutional due process, where as here, Appellant has had the opportunity to test for impartiality. Moreover, in the military context, there may be good operational reasons why an assessing or treating physician may also be required to serve on an R.C.M. 706 board.
That being said, while the Government may be satisfied that a doctor can appropriately function as both a treating physician and subsequent board member in specific situations, that does not mean that a treating physician should always do so. The Government might choose as a prudential matter to eliminate any possible appearance of a conflict of interest, and related litigation, by affirmatively selecting qualified R.C.M. 706 board members with no prior connection to the subject of the review. Such an approach is consistent with the admonition in both the psychologists’ Code of Conduct and the psychiatrists’ Principles of Medial Ethics, which disfavor, and in some cases bar, a treating psychotherapist’s performance of multiple roles.